**Henry Allen FARROUX, Appellant**

v.

**DENNY'S RESTAURANTS, INC.**
**a/k/a Denny's, Inc., Appellee.**

No. 01–96–01215–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 20, 1997.

John E. Humphreys, Seabrook, for Appellant.

James W. Karel, Houston, for Appellee.

Before O'CONNOR, MIRABAL and NUCHIA, JJ.,

### OPINION

O'CONNOR, Justice.

Henry Farroux, the plaintiff below, appeals from the granting of summary judgment in favor of Denny's, Inc. We affirm.

## Facts

One Friday evening in January 1995, about 8:30 or 9:00 p.m., the plaintiff and his wife went to the Flying Dutchman restaurant for a retirement party, along with 35 to 40 people from his wife's office. That evening the plaintiff ate raw oysters, fried shrimp, boiled shrimp, fried fish, fried oysters, scallops, scampi in butter sauce, stuffed crab, stuffed shrimp, hush puppies, ice tea, and possibly a bowl of gumbo. There is no evidence he had a dessert.

On Saturday morning, the plaintiff ate pork skins and drank a cup of coffee. At about 10:00 or 10:30 a.m., he stopped at Denny's restaurant, where he had a Grand Slam breakfast (two eggs over-easy, two pancakes with butter and syrup, two pieces of bacon, and two pieces of sausage), along with coffee and toast. He was about three-quarters of the way through his eggs when he noticed the egg whites did not look completely cooked. He stopped eating and pushed his plate away. The plaintiff admitted on deposition that he did not notice a bad taste or smell, and he did not complain to anyone at Denny's about a problem with the food.

Saturday afternoon, five or six hours after eating at Denny's, the plaintiff felt stomach cramps. About an hour later he began having diarrhea, which continued until he took some sleeping medicine and went to sleep. The plaintiff woke at about 3:30 or 4:00 Sunday morning with diarrhea, severe cramps, and a chill.

Sunday afternoon, the plaintiff went to Clear Lake Regional Medical Center. At the hospital, the plaintiff became nauseated and continued having diarrhea. He stayed overnight and was discharged the next day. He did not recall that the doctors at the medical center told him what might have caused his illness. His discharge diagnosis was "acute viral gastroenteritis and obesity." He was instructed to follow-up with his primary care physician in a week.

In September of that year, the plaintiff went to Clear Lake Regional Medical Center again, complaining that his heart felt like it was skipping a beat and that he was belching and felt sluggish, sleepy, and bloated. A medical history taken upon admission noted the following events in 1995: in January and March, the plaintiff had episodes of bloating, belching, and a fluttering heart; in July, he was diagnosed with ulcers and an irritated esophagus and put on a low fat diet and medication; in August, he was diagnosed with a history of gastroesophageal reflux disease and gastritis; and in early September, he had a surgery because of occasional diarrhea and abdominal pain. He was described as massively obese and suffering from gout, for which he took medication that caused loose stool about twice a day.

On deposition, the plaintiff admitted that no one has ever told him that undercooked egg whites could have caused him to be sick. The plaintiff admitted that his own personal physician told him there were too many possibilities to determine what caused his illness in January. He admitted that no physician has ever told him that any of his health problems in 1995 were caused by or related to the Grand Slam breakfast he had at Denny's.

## Procedural History

The plaintiff sued Denny's for breach of implied warranty, negligence, and gross negligence, alleging he suffered from food poisoning caused by the Grand Slam breakfast. After discovery, Denny's moved for summary judgment, claiming the plaintiff was speculating (1) whether he suffered from food poisoning and (2) what food caused the illness. Denny's alleged the plaintiff had not produced medical evidence to show from what he suffered or the cause, and claimed medical records showed it was unlikely the plaintiff suffered from food poisoning, noting the plaintiff's use of several stomach medicines. It attached as summary judgment evidence excerpts of the plaintiff's deposition and the plaintiff's medical records.

The plaintiff responded that a fact issue remained as to both questions. In his affidavit filed with his response, the plaintiff recounted the events of January 15 and 16, 1995, and said his primary care physician told him he suffered from food poisoning as a result of his meal at Denny's. He stated that the doctor said he would have been sick

much earlier if his illness had been caused by food from the Flying Dutchman. He said none of the other people (35 to 40) who ate at the Flying Dutchman became ill, from which he concluded it must have been the food at Denny's that caused his illness.

In its response, Denny's asserted that plaintiff's entire case was based on guesswork because the plaintiff could not prove he suffered from food poisoning to begin with and could only speculate as to whether the food served at Denny's caused the illness. The trial court granted summary judgment for Denny's. The plaintiff requested the trial court file findings of fact and conclusions of law. The court refused. The trial court granted summary judgment for Denny's on August 19, 1996. The plaintiff timely appealed.

The plaintiff raises two points of error on appeal. He claims the trial court erred by rendering summary judgment against him and in refusing to file findings of fact and conclusions of law.

### Propriety of the Summary Judgment

In point of error one, the plaintiff contends the trial court erred in rendering summary judgment because there are material fact issues about the cause of the plaintiff's illness. Those questions, he claims, entitled him to prevail against Denny's motion for summary judgment.

Denny's replies that the plaintiff's brief did not provide this Court with sufficient argument or authority to consider his point of error. Denny's claims the plaintiff should have identified which material fact issues remain. In the alternative, Denny's argues that it proved it was entitled to summary judgment as a matter of law, and the plaintiff did not raise a fact question.

We disagree with Denny's claim that the plaintiff's brief is insufficient for consideration. The plaintiff appeals the granting of summary judgment and clearly argues that fact questions remained as to whether Denny's food caused his illness. Therefore, we will consider the plaintiff's claims that fact issues remained.

### 1. STANDARD OF REVIEW

Summary judgment is proper only when a movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995); *Bangert v. Baylor College of Medicine*, 881 S.W.2d 564, 566 (Tex.App.—Houston [1st Dist.] 1994, writ denied).

In reviewing the summary judgment, we must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor. *Johnson*, 891 S.W.2d at 644; *Bangert*, 881 S.W.2d at 565–66. In reviewing the granting of a motion for summary judgment, this Court will assume all evidence favorable to the nonmovant is true. *Johnson*, 891 S.W.2d at 644; *Bangert*, 881 S.W.2d at 565.

A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Marchal v. Webb*, 859 S.W.2d 408, 412 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

Once the movant has established a right to a summary judgment, the burden shifts to the nonmovant. The nonmovant then must respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); *Marchal*, 859 S.W.2d at 412.

### 2. NO EVIDENCE OF CAUSATION

Denny's argues it proved, as a matter of law, that the plaintiff's injury was not caused by food he ate at Denny's. We agree.

■ Denny's proved by deposition testimony of the plaintiff and through his medical records that there was no causation between the Grand Slam breakfast and the plaintiff's short-term or long-term illness. The plaintiff's medical records show the plaintiff suffers from obesity and gout. His diagnosis was "acute viral gastroenteritis and obesity." Nothing in the plaintiff's medical records indicates that the plaintiff suffered from food

poisoning after he ate at Denny's. The plaintiff admitted in deposition that no doctor at the hospital told him why he was sick. The plaintiff said that he did not remember any doctor telling him that the eggs he ate at Denny's made him ill. The plaintiff's family doctor, whom he saw one week after becoming ill, said there were too many possibilities to determine what made the plaintiff ill.

The only evidence that connects the meal at Denny's to the plaintiff's illness was the plaintiff's affidavit filed in response to the motion for summary judgment. In that affidavit, the plaintiff swore his personal physician told him that (a) his illness was food poisoning, (b) the food from Friday night was not the cause of the illness, (c) he had become ill from eating the Grand Slam breakfast at Denny's, and (d) if the food he ate Friday night was the cause, it would have made him ill within a few hours. This information was directly contrary to the plaintiff's deposition testimony.

■ A party cannot file an affidavit to contradict his own deposition testimony without any explanation for the change in the testimony, for the purpose of creating a fact issue to avoid summary judgment. If a party's own affidavit contradicts his earlier testimony, the affidavit must explain the reason for the change.[1] Without an explanation of the change in the testimony, we assume the sole purpose of the affidavit was to avoid summary judgment. As such, it presents merely a "sham" fact issue. *Cf. Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168–69 (7th Cir.1996) (called such an affidavit a "sham affidavit"). We hold that the allegations in paragraph 10 of the plaintiff's affidavit, that he had suffered food poisoning from eating at Denny's, were "sham" fact issues.

We find that Denny's proved, as a matter of law, there was no causation between the Grand Slam breakfast and the plaintiff's illness.

We overrule point of error one.

### Findings of Fact

In point of error two, the plaintiff urges us to find error in the trial court's refusal to enter findings of fact and conclusions of law. We refuse.

■ Findings of fact or conclusions of law are not appropriate for summary judgment proceedings. *IKB Indus. Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 441–42 (Tex.1997); *Linwood v. NCNB Tex.*, 885 S.W.2d 102, 103 (Tex.1994); *West Columbia Nat'l Bank v. Griffith*, 902 S.W.2d 201, 204 (Tex.App.— Houston [1st Dist.] 1995, writ denied). The trial court did not err by not making findings of fact and conclusions of law.

We overrule point of error two.

Because of our disposition of the plaintiff's points of error one and two, we do not find it necessary to address Denny's cross-point of error.

We affirm.

---

1. For example, an affiant could explain that he was confused in a deposition, or that he discovered additional, relevant materials after the deposition.