Ingrid SHAW, Appellant,

v.

MADDOX METAL WORKS, INC., Maddox/Adams International, and Samuel L. Maddox, Appellees.

No. 05–01–00332–CV.

Court of Appeals of Texas, Dallas.

March 28, 2002.

Rehearing Overruled May 10, 2002.

Robert M. Clark, Jr., Eddleman, Clark, Dallas, for Appellant.

Paul G. Nason, Locke Ladell & Sapp, Dallas, for Appellees.

Before Justices KINKEADE, WRIGHT, and FITZGERALD.

## OPINION

Opinion By Justice WRIGHT.

Ingrid Shaw appeals the summary judgment granted in favor of Maddox Metal Works, Inc., Maddox/Adams International, and Samuel L. Maddox.[1] In four issues, Shaw contends the trial court erred by granting appellees' motion for summary judgment because (1) certain fact issues exist precluding summary judgment; (2) she had less than twenty-one days' notice of the summary judgment hearing and only one day's notice of certain summary judgment evidence; and (3) the trial court abused its discretion by striking certain summary-judgment evidence and by considering Maddox's reply brief. We affirm, in part, and reverse, in part, the trial court's judgment.

### Factual and Procedural Background

Shaw's husband, Ray Shaw, worked for Maddox Metal for twenty-two years. Ac-

1. Maddox/Adams International is a d/b/a for Maddox Metal Works, Inc. For convenience, we will refer to Maddox/Adams International and Maddox Metal Works, Inc. as "Maddox Metal," Samuel L. Maddox as "Maddox," and all three parties collectively as "appellees."

cording to Shaw, after Ray was diagnosed with cancer, she, Ray, Maddox Metal, and Maddox (personally) orally agreed that after Ray's death, Shaw would receive a lifetime annuity. The amount of the annuity was to be an annual amount equal to six percent of the proceeds of a key man life insurance policy owned by Maddox Metal plus an additional $100 for each mill stone sold by Maddox Metal. Between October 1997 and September 1999, Maddox Metal issued checks to Shaw. From October 1997 until June 1999, the monthly checks were in the amount of $1,605 (an amount equal to six percent of the proceeds from the key man insurance). From July 1999 through October 1999, the monthly payments were reduced to $500. During the same time frame, Maddox Metal also issued several checks in varying amounts. These checks were described as "stones commission."

After Maddox Metal ceased making payments to Shaw, she sued appellees alleging that Maddox Metal breached the oral contract for a lifetime annuity and that Maddox was personally liable under the theory of alter ego. Appellees filed a motion for summary judgment asserting Shaw could not establish an enforceable contract because: (1) of a lack of valid consideration; (2) the terms of the oral contract were indefinite; and (3) the oral contract would not satisfy the statute of frauds. Appellees also asserted that Maddox had not perpetrated an actual fraud on Shaw for Maddox's direct personal benefit and, thus, Maddox was not personally liable for breach of contract under the theory of alter ego. In support of their motion,

appellees relied on, among other things, Maddox's affidavit and excerpts from Shaw's deposition.

In response to appellees' motion, Shaw argued the oral contract was valid and enforceable because (1) it was supported by adequate consideration; (2) her summary judgment evidence showed the duration of the contract as Shaw's lifetime and the amount to be paid as six percent of the proceeds of the key man life insurance policy plus an additional $100 for each mill stone sold by Maddox Metal; and (3) the oral contract did not fall within the statute of frauds because it was capable of being performed within a year. Shaw also argued that Maddox Metal's undercapitalization would support a finding of alter ego. Shaw supported her response with, among other things, her affidavit and deposition excerpts.

Appellees filed a motion, which the trial court granted, to strike certain portions of Shaw's affidavit. Appellees also filed a reply to Shaw's response, supported by an additional one-page excerpt from Shaw's deposition. The trial court granted appellees' motion without specifying its reason for doing so. This appeal followed.

### Discussion

We review a summary judgment *de novo* to determine whether a party's right to prevail is established as a matter of law. *Foreness v. Hexamer,* 971 S.W.2d 525, 527 (Tex.App.-Dallas 1997, pet. denied). In doing so, we apply well-known standards. *See Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).[2] Once the

---

**2.** Although appellees' motion purports to be a "no-evidence" motion under rule 166a(i), appellees allege in the motion that they are entitled to judgment as a matter of law because the summary judgment evidence shows the oral agreement was not supported by legally sufficient consideration, did not have

definite terms, and was barred by the statute of frauds. Appellees also allege the summary judgment evidence shows Maddox had not perpetrated an actual fraud on Shaw for Maddox's personal benefit. This is not a "no-evidence" motion for summary judgment, but rather a traditional motion for summary judg-

defendant produces evidence entitling it to summary judgment, the burden shifts to the plaintiff to present evidence creating a fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996). When, as here, the trial court does not specify the basis for its ruling, an appellant is required to show that each of the independent grounds asserted in support of summary judgment was insufficient to support the trial court's ruling. *Orozco v. Dallas Morning News*, 975 S.W.2d 392, 394 (Tex.App.-Dallas 1998, no pet.).

### Unenforceable Contract

Appellees moved for summary judgment on the ground that the oral contract was unenforceable because, among other things, it was not supported by legally sufficient consideration. Appellees supported this allegation with excerpts from Shaw's deposition. In her deposition, Shaw testified that she had no obligations under the agreement. Shaw explained that Maddox Metal agreed to pay her a lifetime annuity because her husband had "performed a service for Maddox Metal Works as the gear engineer and the executive vice president and he went to work every day. That's the way I [understood] it. And he was promised that the life insurance policy would be converted into a retirement annuity." Shaw agreed the terms of the agreement were that "because Mr. Shaw had worked for Maddox Metal Work for 22 years[,] Maddox Metal Works would pay [Shaw] the retirement payments for the rest of [her] life." Because Ray's past performance could not

serve as consideration to support the promise of a lifetime annuity, *see Mason v. Babin*, 474 S.W.2d 809, 812 (Tex.Civ.App.-Waco 1972, writ ref'd n.r.e.), the burden shifted to Shaw to come forward with evidence creating a fact issue regarding whether the contract was supported by legally sufficient consideration.

Shaw responded that, contrary to appellees' contention, the agreement was not solely supported by Ray's past performance at Maddox Metal, but also by his promise to continue working at Maddox Metal until he died. In support of this argument, Shaw relied on her affidavit. In her affidavit, she testified that the agreement "required Raymond Shaw to continue working for Maddox Metal Works, Inc. in exchange for a lifetime annuity and royalty payments of $100.00 for each mill stone sold for me, his widow, after his death."

 The day before the summary judgment hearing, appellees objected to this portion of Shaw's affidavit because the affidavit testimony conflicted with Shaw's deposition testimony. In particular, appellees claimed Shaw's deposition testimony that the only consideration for the agreement was Ray's past performance conflicted with her affidavit where she claimed his continued employment as well as his past performance was the consideration for the agreement. The trial court agreed, granted appellees' objection, and struck this portion (among others) of Shaw's affidavit.[3] After reviewing the summary judgment

ment seeking to negate an element of the plaintiff's theory of recovery or establish an affirmative defense. Thus, we will review the motion under the standards applicable for a traditional motion for summary judgment, not under the standard applicable for a rule 166a(i) motion. Further, we note that the outcome of this appeal would be the same under either standard of review.

3. In her third issue, Shaw challenges all of the trial court's evidentiary rulings. Because we must only address those rulings necessary for disposition of this appeal, we limit our discussion to the trial court's decision to strike sentence three of paragraph two of Shaw's affidavit. *See* TEX.R.APP. P. 47.1.

evidence, we cannot conclude the trial court acted within its discretion. We are mindful that in deciding whether the trial court has abused its discretion, we may not substitute our judgment for the trial court's. *See Multi–Moto Corp. v. ITT Commercial Fin. Corp.*, 806 S.W.2d 560, 567–68 (Tex.App.-Dallas 1990, writ denied). The test is whether the trial court acted without reference to any guiding rules or principles, or acted in an arbitrary or unreasonable manner. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

◼ Generally, a deposition does not have controlling effect over an affidavit in determining whether a motion for summary judgment should be granted. *See Randall v. Dallas Power & Light Co.*, 752 S.W.2d 4, 5 (Tex.1988) (citing *Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557, 562 (1962)). Thus, when a deposition and an affidavit filed by the same party in opposition to a motion for summary judgment conflict, a fact issue is presented that will preclude summary judgment. *Randall*, 752 S.W.2d at 5. However, appellees, relying on *Farroux v. Denny's Restaurants, Inc.*, 962 S.W.2d 108, 111 (Tex. App.-Houston [1st Dist.] 1997, no pet.), contend that the trial court properly struck the conflicting testimony and, thus, summary judgment was proper.

In *Farroux*, the court of appeals held that the conflict between the deposition and affidavit was so disparate as to amount to nothing but a "sham" fact issue. *See Farroux*, 962 S.W.2d at 111. In the absence of an explanation for the change in testimony, the court assumed the sole purpose of the affidavit was to avoid summary judgment, and struck the affidavit. *See id.*[4]

◼ Here, the differences between Shaw's deposition testimony and her affidavit testimony are not, as in *Farroux*, clearly contradictory. We recognize there are variances between Shaw's deposition testimony and her affidavit testimony; however, we cannot conclude the differences are so egregious that the complained-of statements should be disregarded. Rather, we conclude that Shaw's deposition testimony does not have a controlling effect over her affidavit. *See Randall*, 752 S.W.2d at 5. Thus, the conflicts between Shaw's deposition testimony and her affidavit testimony present a fact issue regarding whether the oral agreement to pay Shaw a lifetime annuity was solely in exchange for Ray's past service for Maddox Metal or whether the agreement was in exchange for not only his past performance but also for his promise to continue to work. *See Randall*, 752 S.W.2d at 5; *Cantu v. Peacher*, 53 S.W.3d 5, 9 (Tex.App.-San Antonio 2001, pet. denied). We conclude the trial court erred by striking the third sentence of paragraph two of Shaw's affidavit.

◼ Having so concluded, we will consider the third sentence of paragraph two of Shaw's affidavit when considering whether the trial court properly granted summary judgment on the ground that the contract is unenforceable because it is not supported by consideration. Shaw's deposition and affidavit testimony present a fact issue regarding whether the oral

---

4. In *Thompson v. City of Corsicana Housing Authority*, 57 S.W.3d 547, 557 (Tex.App.-Waco 2001, no pet.), the Waco Court of Appeals held that *Farroux* was wrongly decided and that inconsistent or conflicting summary judgment proof creates a fact issue for the trier of fact to resolve. We need not determine if *Farroux* is wrongly decided because, assuming it is correct, we nevertheless conclude the conflicts in this case are not so egregious as to conclude the fact issue is a "sham" to be disregarded.

agreement to pay Shaw a lifetime annuity was solely in exchange for Ray's past service for Maddox Metal or whether the agreement was in exchange for not only his past performance but also for his promise to continue to work. In other words, the summary judgment evidence contains a fact question regarding whether Maddox Metal (the promisor) offered to pay Shaw a lifetime annuity if Ray (the promisee) continued to work for Maddox Metal. By working until his death (*i.e.,* performing), Ray accepted Maddox Metal's offer and created a binding unilateral contract. *See Light v. Centel Cellular Co.,* 883 S.W.2d 642, 645 n. 6 (Tex.1994) (explaining formation of unilateral contract); *Dodson v. Stevens Transp.,* 776 S.W.2d 800, 805 (Tex.App.-Dallas 1989, no writ) (same); *Herschbach v. City of Corpus Christi,* 883 S.W.2d 720, 733 (Tex.App.-Corpus Christi 1994, writ denied) (unilateral contract is completed by promisee's performance of act called for, not by reciprocal promise). Thus, the trial court could not properly grant summary judgment on the ground that the contract was unenforceable because it was not supported by consideration.

Appellees next contended that the contract was unenforceable because the terms of the contract were not certain. Specifically, appellees alleged the duration of the contract and the amount to be paid were too indefinite to be enforced. *See Fin. Review Serv., Inc. v. Prudential Ins. Co.,* 50 S.W.3d 495, 511 (Tex.App.-Houston [14th Dist.] 1998) (if alleged oral agreement is so indefinite it is impossible to fix legal obligations and liabilities of parties, it cannot constitute enforceable contract), *aff'd,* 29 S.W.3d 74 (Tex.2000). Appellees supported this ground for summary judgment with excerpts from Shaw's deposition where she admitted that Maddox never told her the annuity was for her lifetime, but rather she assumed it was. If this were the only evidence that the agreement was to pay Shaw the annuity for her lifetime, we would agree that the duration of the agreement was too indefinite.

■ However, Shaw's summary judgment evidence includes the deposition testimony of her certified public accountant, Roger Asel, and William Ellis. Asel testified that, after Ray died, Asel spoke with Maddox about the monthly checks to Shaw. During the course of that conversation, Asel believed Maddox used the term "life annuity." Ellis testified that immediately after Ray's funeral, Maddox assured Ellis he would "provide a retirement for [Shaw's] lifetime." This evidence creates a fact issue regarding whether the duration of the contract was for Shaw's lifetime.

With respect to the amount to be paid, Shaw testified in her affidavit, without objection, that "[t]he amount of $19,260 per year was arrived at and agreed upon. That annual amount is six (6%) percent of the proceeds of the key man policy." Shaw also stated that Maddox partially complied with the agreement by paying the agreed-to annuity on a monthly basis and by paying for mill stone sales at the rate of $100.00 per mill stone. The summary judgment evidence also shows that Maddox Metal sent checks, described on the check stubs as a "retirement annuity," to Shaw *once a month in the amount of* $1,605 (1/12th of $19,260). Maddox Metal sent additional checks, described as "stones commission," for varying amounts. This evidence is sufficient to create a fact issue regarding the amount Maddox Metal agreed to pay Shaw. Thus, the trial court could not properly grant summary judgment on the ground that the terms of the agreement were too indefinite regarding the time period or amount which Maddox Metal agreed to pay Shaw.

Finally, appellees contended the contract was unenforceable because the statute of frauds barred Shaw's claim for breach of contract. According to appellees, the contract was not capable of being performed within one year of the date of its making and, thus, it must be in writing to be enforceable. We disagree.

Section 26.01(b)(6) of the Texas Business and Commerce Code provides that, to be enforceable, agreements "which are not to be performed within one year from the date of making the agreement" must be in writing. TEX. BUS. & COM.CODE ANN. § 26.01(a)(6) (Vernon 1987). When, as here, the date performance will be completed cannot be readily ascertained, the law provides that if performance could conceivably be completed within one year of the agreement's making, a writing is not required to enforce it. *See Miller v. Riata Cadillac Co.*, 517 S.W.2d 773, 776 (Tex. 1974); *Young v. Ward*, 917 S.W.2d 506, 511 (Tex.App.-Waco 1996, no writ). Here, there is no known date for completion of the contract because the date of Shaw's death is not known. However, because Shaw could have died at any time, the contract was *capable* of being fully performed within one year of its making. *See Young*, 917 S.W.2d at 511. Thus, it need not be in writing to be enforceable. *See id.*

In reaching this conclusion, we necessarily reject appellees' reliance on cases holding that promises of employment for life must be in writing to satisfy the statute of frauds. *See, e.g., Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex.1991). When, as in *Schroeder*, an employer makes a promise of lifetime employment, the duration of the contract may be implied. *See id.* That is so because the duration of the contract is for the employee's working life, not until the employee's death. *See id.* In other words, the com-pletion date of the contract may be ascertained by determining the employee's anticipated retirement date. In *Schroeder*, the court implied a duration of eight to ten years from the date of the making of the contract. *Id.*

In contrast, this case involves a lifetime annuity. The date of completion is Shaw's death, not her anticipated retirement. We cannot imply a duration for the contract because, unlike an anticipated retirement date, there is no meaningful way to anticipate the date of Shaw's death. Moreover, as the court in *Young* noted, there is a distinction between termination of the contract and performance under the contract. *Young*, 917 S.W.2d at 511. Because nonperformance or termination of the agreement is not an event that takes the contract out of the statute of frauds, events that will prevent performance are not considered as factors when determining whether the contract is capable of being performed within a year. *Id.* In other words, if a contract expressly states that it ends upon the death of a party, then the death of the party means that the contract has been fully performed in the time frame contemplated by the parties. Conversely, a lifetime employment contract contemplates *retirement* at the end of the agreement, not *death*. The death of the employee prior to retirement would terminate the lifetime employment agreement and result in nonperformance of the contemplated time frame of the agreement. *See id.*

Because this case involves a promise for a lifetime annuity and not a promise for lifetime employment, we conclude appellees' reliance on cases such as *Schroeder*, involving contracts for lifetime employment, is misplaced. The contract in this case was capable of being fully performed within one year of the date of its making. Thus, we conclude the trial court could not have properly granted summary judgment

on the ground that Shaw's cause of action for breach of contract was barred by the statute of frauds.

## Alter Ego

Maddox moved for summary judgment claiming that he was entitled to judgment as a matter of law because the summary judgment evidence showed Maddox had not committed an actual fraud on Shaw for Maddox's direct personal benefit. Shaw responded by arguing that Maddox Metal's undercapitalization would support a finding of alter ego. We disagree.

■■■■■ "Alter ego" is a basis for disregarding the corporate fiction and imposing individual liability on a shareholder or affiliate of the corporation. *See Castleberry v. Branscum,* 721 S.W.2d 270, 272 (Tex. 1986). It applies "when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." *Id.* Alter ego is shown "from the total dealings of the corporation and the individual, including the degree to which ... corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Id.* Once alter ego is found to exist, the plaintiff must then show that the person on whom liability is sought to be imposed caused the corporation to be used for the purpose of perpetrating, and perpetrated an actual fraud on the obligee for the direct personal benefit of the person on whom liability is sought to be imposed. *See* TEX. BUS. CORP. ACT ANN. Art. 2.21(A), (B) (Vernon Supp.2001).

■■■■ Maddox sought judgment as a matter of law because the summary judgment evidence showed that he had not used the corporation for perpetrating an actual fraud on Shaw. In support of this ground for summary judgment, Maddox relied on an excerpt from Shaw's deposition where she testified that she did not believe Maddox used Maddox Metal to engage in fraud. In response, Shaw alleged summary judgment was precluded because Maddox Metal was undercapitalized. Whether Maddox Metal is operated as an alter ego is a step removed from whether Maddox caused the corporation to be used for the purpose of perpetrating and did, in fact, perpetrate an actual fraud on Shaw for Maddox's direct personal benefit. Thus, although undercapitalization is a factor to be considered in determining whether a corporation is being operated as an alter ego, the mere existence of this fact does not in any way create an issue of material fact regarding whether Maddox committed a fraud on Shaw for Maddox's personal benefit.

■■■■ On appeal, Shaw also argues that the trial court erred by granting summary judgment for Maddox individually because (1) he agreed to be personally liable; and (2) Maddox committed fraud upon the Shaws by making an oral agreement for a lifetime annuity for Shaw so that Maddox could collect on the key man insurance on Ray. Shaw did not, however, present these arguments to the trial court. Issues which the nonmovant contends preclude the granting of a summary judgment must be expressly presented to the trial court by written answer or other written response to the motion. *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993). Issues not expressly presented to the trial court in writing shall not be considered on appeal as grounds for reversal. TEX.R. CIV. P. 166a(c). Because Shaw did not contend, as she does on appeal, that Maddox is personally liable on the contract because he agreed to be or that Maddox perpetrated an actual fraud

on the Shaws by making an oral agreement for a lifetime annuity so that he could collect the key man insurance, we do not consider these contentions on appeal.

We sustain appellant's first issue to the extent she contends the trial court erred by granting summary judgment on her cause of action against Maddox Metal for breach of contract. We overrule appellant's first issue to the extent she contends the trial court erred by granting summary judgment for Maddox, individually. Having done so, we need not address appellant's remaining issues. *See* TEX.R.APP. P. 47.1.

Accordingly, we reverse the trial court's summary judgment in favor of Maddox Metal on Shaw's claim for breach of contract. We affirm the trial court's summary judgment in favor of Maddox, individually. We remand to the trial court for further proceedings consistent with this opinion.