Sharon.McCally, Justice,
dissenting..
I.
Summary of the Dissent
The trial court granted Navistar’s motion for - partial summary judgment on standing, holding that after June 2006 Lu-jan no longer owned the trucks he was *440 suing over. But Lujan swore in an affidavit that he did not transfer his ownership.[1] It is undisputed that Lujan’s affidavit would have defeated Navistar’s motion for summary judgment on standing. However, the trial court disregarded Lujan’s ownership affidavit as a sham affidavit.[2]
The Majority affirms the striking of the affidavit and the resulting summary judgment not only by adopting the sham affidavit doctrine in this Court for the first time, but also by expanding that doctrine well beyond any prior application in any Texas court. I respectfully dissent because:
• We should reject the sham affidavit doctrine as it is contrary to Texas Supreme Court precedent and without support in the Texas Rules of Civil Procedure; and
• Even if we adopt the sham affidavit doctrine, as the Majority does, the doctrine does not—by its terms—apply to the evidence in this case.
II.
We should reject the sham affidavit doctrine as contrary to Texas Supreme Court precedent, and the Texas Rules of Civil Procedure.

A. Inception of the Sham Affidavit Doctrine

The sham affidavit doctrine first emerged in a Texas Court of Appeals in 1997,[3] borrowed from a federal court[4] Nearly twenty years later, there remains a split among Texas courts of appeals over the adoption of the sham affidavit doctrine, as the Majority acknowledges. But the Fourteenth Court of Appeals has never adopted it. And the Texas Supreme Court has never mentioned it.
On the surface, the doctrine sounds perfectly reasonable: A party cannot file a summary judgment affidavit to contradict his own prior deposition testimony without explaining the change in the testimony; otherwise, the trial court may disregard it as a sham affidavit, filed solely for the purpose of manufacturing a fact issue to avoid summary judgment. See Farroux v. Denny’s Rests., Inc., 962 S.W.2d 108, 111 (Tex.App.—Houston [1st Dist.] 1997, no pet.). The doctrine, is enticing, of course, because courts do not like to reward parties who lie to perpetuate litigation. On closer scrutiny, however, the doctrine is both unnecessary and useless.
The doctrine is unnecessary to accomplish its stated purpose. Where a party makes a testimonial declaration that meets the five-factor test set forth by the Texas Supreme Court in Mendoza v. Fidelity & Guaranty Insurance Underwriters, Inc., it is treated as a quasi-admission, “conclusive upon the admitter.” 606 S.W.2d 692, 694 *441 (Tex.1980).[5] In contrast to our court’s silence on the sham affidavit doctrine, we have applied the Mendoza quasi-admission doctrine. See, e.g., Aguirre v. Vasquez, 225 S.W.3d 744, 756 (Tex.App.—Houston [14th Dist.2007, no pet.).
Moreover, the sham affidavit doctrine is useless for deterring anything but the most incompetent liar because it has no application to a litigant who:
• lies from the outset of the litigation, see St. Mary’s Honor Ctr. v. Hicks, 509 U.S. 502, 522 (1993) (“[Pjerjury may purchase the defendant a chance at the factfinder [but] it also carries substantial risk.”);
• lies in a deposition after telling the truth in that same deposition, see Duffield v. Penman, No. 01-98-01131-CV, 1999 WL 1018180, at *3-4 (Tex. App.—Houston [1st Dist.] Nov. 10, 1999, no pet.) (not designated for publication) (contradictions within the false-imprisonment plaintiffs deposition about whether she was voluntarily or involuntarily detained created a fact question);
• lies on an errata sheet within twenty days after telling the truth in a deposition, see Tex.R. Civ. P. 203.1(b);
• lies in the post-deposition summary judgment affidavit, explaining that he was “confused” in his deposition when he provided the contradictory, truthful testimony, see Farroux, 962 S.W.2d at 111 n.1.
But no matter the equitable appeal of punishing at least the inept liar, we cannot adopt the sham affidavit doctrine because (1) it is completely at odds with binding Texas Supreme Court precedent; and (2) it is not authorized by the Texas Rules of Civil Procedure.
B. Stare decisis demands that we reject the sham affidavit doctrine.
In Randall v. Dallas Power & Light Co., the Texas Supreme Court unequivocally stated the established rule that “a deposition does not have controlling effect oyer an affidavit in determining whether a motion for summary judgment should be granted.” 752 S.W.2d 4, 5 (Tex.1988) (citing Gaines v. Hamman, 358 S.W.2d 557 (1962)). The Randall court then reversed the summary judgment granted in the face of conflicting deposition and affidavit testimony. The Randall court could not have made it any clearer. A deposition does not control over an affidavit.
The sham affidavit doctrine is squarely in conflict with Randall. There is certainly no reconciling the doctrine with Randall’s dictate. See Wilson, supra, at 967 (“Not only are the various Texas courts of appeals split on sham affidavits, but at least six of the courts of appeals seem to conflict with prior Supreme Court authority.”).
The courts of appeals that reject the doctrine do so because of Randall. See, e.g., Davis v. City of Grapevine, 188 S.W.3d 748, 756 (Tex.App.—Fort Worth 2006, pet denied) (holding that, notwithstanding other courts’ adoption of the doctrine,[1] “[w]e will adhere to our precedent and continue to apply the rule set forth by the Texas Supreme Court in Randall that when conflicting inferences may be drawn between a party’s summary judgment affidavit and his deposition on matters of material fact, a fact issue is presented”); see also Sosebee v. Hillcrest Baptist Med. Ctr., 8 S.W.3d 427, 435 (Tex.App.—Waco 1999, pet. denied) (per curiam).
*442 One appellate court has attempted to reconcile the sham affidavit doctrine with the Randall precedent. In Cantu v. Peacher, 53 S.W.3d 5, 10-11 (Tex.App.—San Antonio 2001, pet. denied), the court described Randall as “[t]he most tolerant view of conflicting statements between the same witness’s testimony in a' deposition and affidavit.” Id. at 9. And, then, the court adopts a “shades and phases” test for conflicting testimony as a middle ground between Randall and Farroux:
Having reviewed the different line of cases, we conclude that a court'must examine the nature and extent of the differences in the facts asserted in the deposition and the affidavit. If the differences fall into the category of variations on a theme, consistent in the major allegations but with some variances for detail, this is grounds for impeachment, and not a vitiation of a later filed document. If, on the other hand, the subsequent' affidavit clearly contradicts the witness’s earlier testimony involving the suit’s material points, without explanation^ [6]] the affidavit must be disregarded and will not defeat the motion ;for summary judgment.
Id. at 10-11.
Yet the Cantu court’s attempt to reconcile the doctrine with binding precedent wholly fails. Such a test is' still at complete odds with the Randall command that a deposition does not control over an affidavit. Such a test still impermissibly permits a trial court to disbelieve and therefore disregard affidavit testimony as false because it is in conflict with an earlier deposition.
Our court simply does not have the authority to ignore Randall. See Swilley v. McCain, 374 S.W.2d 871, 875 (Tex.1964) (“After a principle, rule or proposition of law has been squarely decided by the Supreme Court ... the decision is accepted as a binding precedent by the same court or other courts of lower rank when the very point is again presented in a subsequent suit between different parties.”). Randall is, indeed, a more tolerant view of conflicting summary judgment evidence than the courts of appeals following Farroux,[7] and we are bound by it, even though it means the occasional lying litigant will get a trial.

C. Rule 166a does not authorize striking a sham affidavit.

We cannot look to the Texas Rules of Civil- Procedure for authority to adopt the sham affidavit doctrine because our summary judgment rules are in accord with Randall. Texas Rule of Civil Procedure 166a does not authorize a trial court to disregard or strike an affidavit that contradicts the affiant’s prior testimony. Tex-.R. Civ. P 166a(h). Specifically, Rule 166a(h), regarding the treatment of summary judgment affidavits- filed in bad faith provides in its entirety;
*443 Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney’s fees, and any offending party or attorney may be adjudged guilty of contempt.
Thus, the plain language of the rule sets forth both a mandatory remedy for filing a bad-faith affidavit and a discretionary remedy for filing a bad-faith affidavit. Money, is the mandatory remedy. Contempt is the permissive remedy. Neither striking nor disregarding a summary judgment affidavit is a remedy provided. And although the Texas Supreme Court has revised the Rules, and Rule 166a in particular, numerous times since Randall and since the genesis of the sham affidavit doctrine in a few courts of appeals, the Court has never revised Rule 166a(h) to enlarge the trial court’s discretion to strike or disregard an affidavit on the belief that it was made in bad faith or that it contains a lie. Adjudicating the 'facts by disregarding sworn evidence is simply not in the trial judge’s summary-judgment tool kit, not even where the.affiant appears to be unequivocally lying.
The sham affidavit doctrine likewise finds no support in Rule 166a(c) though it addresses the credibility of interested witnesses. See Tex.R. Civ. P. 166a(e) (“A summary judgment may be based on un-controverted testimonial evidence of an interested witness or of an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies and could have been readily controverted.”). Rule 166a(e) vests a trial court with authority to reject, interested-witness testimony only when such evidence is offered to support a motion for summary judgment. See Casso v. Brand, 776 S.W.2d 551, 558 (Tex.1989) (“Our summary judgment rule permits the granting of a summary judgment on the basis of uncontroverted testimonial evidence of an interested witness if that evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.” (quotation omitted)). In other words, a trial court faced with the uncon-troverted affidavit of an interested witness may decline to grant a summary judgment on that affidavit if the trial court determines that the issue turns on credibility or such affidavit is, inter alia, not “otherwise credible.” See, e.g., Wohlstein v. Aliezer, 321 S.W.3d 765, 771-72 (Tex.App.—Houston [14th Dist.], no pet.).
Rule 166a(c) fully reflects Texas policy on summary judgment evidence to err on the side of finding a fact question. Preserving the role of the fact finder to determine credibility is so important that even where the movant’s uncontroverted summary judgment evidence supports judgment, Rule 166a(c) permits the trial court to deny the motion. See, e.g., Frias v. Atl. Richfield Co., 999 S.W.2d 97, 106 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (holding that defendant’s stated absence of intent to injure the plaintiff, a material issue in the case, should not form the foundation -of a summary- judgment because credibility on that point is likely to be dispositive).
The Texas Rules of Civil Procedure governing summary judgment practice provide two remedies for bad faith affidavits filed to avoid a summary judgment: money and contempt. The Rules do not per *444 mit striking affidavits and adjudicating the facts as a punishment for lying in a summary judgment affidavit.[8] The Majority offers no explanation for its disregard of ■the plain language of Texas Rule of Civil Procedure 166a.
III.
The sham affidavit doctrine does not apply here because Lujan’s affidavit is not contradicted by Lujan’s prior sworn deposition.
Lujan filed an affidavit in which he testified that he owned the subject trucks. The sham affidavit doctrine permits the trial court to strike the Lujan ownership affidavit if (1) it conflicts with his prior deposition testimony; and (2) it fails to supply an explanation for the contradiction. See Farroux, 962 S.W.2d at 111.
It is undisputed that there is no earlier Lujan deposition testimony that conflicts with the Lujan affidavit. The summary judgment record does not contain any “other types of sworn statements” from Lujan about ownership of the trucks. No interrogatory responses. No admissions. No statements under oath. In short, at no place in this summary judgment record is there a sworn statement from Lujan that he sold the trucks, transferred the trucks, or even made an IRS election regarding the trucks. The Majority points to no conflicting or contradictory statement from Lujan. And Navistar never argued, that such exists. Instead, Navistar argued that “[t]he weight of the evidence clearly shows that Plaintiff did transfer his assets, including the trucks at issue, to a corporation.” Even now, on appeal, Navistar does not argue that Lujan gave contradictory deposition testimony or that this ease fits the Farroux pattern.[9]
Texas courts addressing the question, such as ours, have refused to’ expand the doctrine beyond the Farroux pattern. In Argovitz, bur court refused to consider adopting the sham’ affidavit doctrine because the facts of the case did not fit the pattern. See Argovitz v. Argovitz, No. 14-07-00206-CV, 2008 WL 5131843, at *20-21 (Tex.App.—Houston [14th Dist.] Dec. 9, 2008, pet. denied) (mem.op.) (noting that “the sequence of events under the sham affidavit doctrine ‘ contemplates deposition testimony followed by the filing of a contradictory sham affidavit” but “[t]his case does not fit the pattern”). The Tyler Court of Appeals similarly determined that *445 an , inconsistency in sworn interrogatory answers and an affidavit does not give rise to the sham affidavit doctrine. See. Pierce v. Wash. Mut. Bank, 226 S.W.3d 711, 717 (Tex.App.—Tyler 2007, pet. denied). And, the Corpus Christi Court of Appeals rejected application of the doctrine where the affidavit was taken three days prior to the deposition in a slight, but meaningful, departure from the pattern. See Smith v. Mosbacker, 94 S.W.3d 292, 295 n. 1 (Tex. App.— Corpus Christi 2002, no pet.). No Texas appellate court has expanded the doctrine.[10]
The Farroux pattern is a party’s deposition testimony followed by that party filing a contradictory sham affidavit. The only evidence the Majority points to as implicating the sham affidavit doctrine is un-sworn documentary evidence attributable to a nonparty. Because this case does not fit the pattern of the sham affidavit doctrine, the trial court abused its discretion by striking the Lujan ownership affidavit as a sham.
IV.
The sham affidavit doctrine does not apply here because there is no contradictory summary judgment evidence on ownership (from anyone).
Moreover, even if we extend the sham affidavit doctrine to the unsworn documentary evidence of a nonparty, we must still identify a conflict or contradiction between such evidence and the Lujan ownership affidavit as part of the Farroux analysis. See, e.g., Benchmark Bank v. Am. Nat’l Bank of Tex., No. 05-14-00810-CV, 2016 WL 638095, at *9 (Tex.App.—Dallas Feb. 17, 2016, no pet. h.) (mem,op.) (reversing trial court and holding that affidavit testimony is “not so contradictory” that the “affidavit should be disregarded” (emphasis added)); see also Shaw v. Maddox Metal Works, Inc., 73 S.W.3d 472, 477-78 (Tex.App.— Dallas 2002, no pet.) (reversing and holding that difference in deposition testimony that the oral contract was supported only by past performance and affidavit testimony that the oral contract was supported by both past performance and a promise of continued employment is not “so egregious” as to support disregarding the affidavit).
The Majority applies the sham affidavit doctrine to Lujan’s ownership affidavit upon finding that “it directly contradicted” the following summary judgment evidence:
(1) the Corporation’s judicial admission [11] in support of its attempted intervention that Lujan’s assets, including the trucks at issue, had been transferred to the Corporation;
(2) the Corporation’s reliance on the section 351 election filed with its federal *446 income tax return as evidence that Lu-jan had transferred all of the assets and liabilities of his sole proprietorship to the Corporation in exchange for 100% of the stock;
(3) Lujan’s counsel’s representations on behalf of the' Corporation that the section 351 election and corporate tax returns demonstrated that Lujan’s assets were transferred “lock, stock and barrel” to the Corporation in 2006; and
(4) the tax returns and banking documents reflecting that, contrary to Lu-jan’s affidavit, the Corporation actively conducted business and engaged in banking transactions.
Setting aside the reality that none of the recited evidence amounts to a prior sworn statement from Lujan, I disagree that anything recited is summary judgment evidence that actually conflicts with Lujan’s affidavit of ownership.
A. The Corporation’s attempted intervention does not contradict Lujan’s ownership affidavit.
The Majority relies upon the Corporation’s intervention pleadings. But those pleadings are completely consistent with Lujan’s claim that he did not transfer title to the trucks.. Specifically, the Corporation pled, in relevant part:
In 2005 Plaintiff, Albert Lujan d/b/a Texas Wholesale Flower Co., purchased the CF600 trucks made the basis of his warranty claims. In 2007 Plaintiff involuntarily purchased the 4300M trucks that replaced the CF600 trucks.
On June 12, 2006, at his accountant’s recommendation, Plaintiff made an IRS Section 351 election transfer. Pursuant to the election, Plaintiff transferred all of the assets and liabilities of Texas Wholesale Flower Co. to Texas Wholesale • Flower Co., Inc., in exchange for 100% ownership of the stock. Hereto attached is the page from Intervenor’s 2006 corporate return that indicates the exchange. Although the return • reflects the trucks were transferred, legal title was not transferred. Plaintiff continued to conduct business without change. Because of the Section 351 exchange, Interve-nor believes that it may have an interest in this dispute.
(emphasis added).
To find a conflict, the Majority must disregard the statement that “legal title was not transferred.” A trial court cannot consider statements pulled out of context to determine whether a conflict exists, Youngblood v. U.S. Silica Co., 130 S.W.3d 461, 469-70 (Tex.App.—Texarkana 2004, pet. denied) (noting that, when examined “in a vacuum,” there is a contradiction, but looking at the testimony in context of the entire deposition, the deposition and affidavit “are not apposite”). When the pleadings are read, as a whole, Lujan’s statement that he did not transfer ownership of the subject trucks is completely consistent with the Texas Wholesale Flower’s pleadings.
B. The “Section 351 Election” form does not contradict Lujan’s ownership affidavit.
The Section 351 Election is set forth here in its entirety.
*447 [[Image here]]
As is evident from the face of the 351 document, there is no statement that Lu-jan does not own the subject trucks. The document does not purport to transfer title to the subject trucks. And, although the word “trucks” does appear on the 351 document, there is no way to know from the document whether the trucks referenced *448 are the subject CF600 trucks or the replacement 4300M trucks, or some other trucks. The document cannot be read, factually, to suggest that Lujan transferred legal title to the subject trucks.
Similarly, the document cannot be read, legally, to mean that Lujan is not the owner of the subject trucks. Section 351, a provision of the Internal Revenue Code, is part of a complicated regulatory scheme to provide a tax benefit upon certain transfers of property for stock or securities. See 26 U.S.C. § 351; see also Hempt Bros., Inc. v. U.S., 490 F.2d 1172, 1177 (3d Cir.1974) (noting that “[b]y its explicit terms Section 351 expresses the Congressional intent that transfers of property for stock or securities will not result in recognition”).
The Majority references neither evidence nor citation to authority to support the implicit holding that a Section 351 exchange under the Internal Revenue Code is a transfer of legal title. Section 351 of the Internal Revenue Code simply “provides [one of the] various mechanisms where by [a] reorganization may be accomplished tax-free.” Sealock v. Tex. Fed. Sav. & Loan Ass’n, 755 S.W.2d 69, 71 (Tex.1988). But it is “[b]eneficial ownership, not legal title, [that] determines ownership for Federal Income tax purposes.” Windheim v. Comm’r, 97 T.C.M. (CCH) 1783, 2009 WL 1636287, at *3 (2009); see also Regghianti v. Com’r, 71 T.C. 346, 349 (1973) (noting that a party to a transaction may be treated as an owner under the I.R.C. even though legal title has not passed), aff'd, 652 F.2d 65 (9th Cir.1981).
By its plain language, a Section 351 statement or election, even if filed with the IRS, does not effect or accomplish a transfer of title to property. It contemplates tax treatment “if property is transferred.” 26 U.S.C. § 351. There is no conflict between Texas Wholesale Flower’s unsigned, unsworn “Section 351 Election” and Lu-jan’s affidavit.[12]

C. “Counsel’s representations” on behalf of the Corporation are not summary judgment evidence at all and, thus, do not contradict Lujan’s ownership affidavit.

Unsworn statements of counsel are not evidence. See Jones v. Villages of Town Ctr. Owner’s Ass’n, No. 14-12-00306-CV, 2013 WL 2456873, at *5 (Tex.App.—Houston [14th Dist.] June 6, 2013, pet. denied) (mem.op.); Daugherty v. Jacobs, 187 S.W.3d 607, 619 (Tex.App.—Houston [14th Dist.] 2006, no pet.).

D. The Corporation’s records, indicating it is “actively conducting] business and engaging] in banking transactions,” do not contradict Lu-jan’s ownership affidavit.

The Majority specifically references statements in the Corporation’s 2006 federal tax return made “under penalty of *449 perjury.”[13] Although the Majority identified what it perceives as conflicts in the unsigned tax returns with Lujan’s testimony that the Corporation “never conducted business,” the Majority identifies' nothing in the corporate banking documents or corporate tax returns that addresses in any way the legal title to the trucks at issue in this case.
In summary, even if we adopt the doctrine known as the “sham affidavit doctrine,” we must immediately depart from its terms to affirm the trial court’s decision to strike Lujan’s ownership affidavit because:
• Lujan never testified or swore, in any form, before or after he signed the ownership affidavit, to anything that contradicts his statement that he did not transfer legal title to the subject trucks; and
• even if we credit all of the other .summary judgment evidence and then pretend it was spoken by Lujan himself, it still does not contradict the ownership statements in his affidavit.
We should not stretch to make this doctrine apply where it does not.
V.
Conclusion
First, for our court to indulge the judicial urge to punish inept liars through a •sham affidavit doctrine, we must disregard binding precedent and unambiguous rules. Instead, we should join with the other Texas Courts of Appeal that reject the sham affidavit doctrine.
Second, the Majority “applies” the sham affidavit doctrine so far from its original boundaries that it is now unrecognizable and -undefined. To uphold the trial court’s evidentiary decision to strike Lujan’s affidavit on these facts, the Majority must mold the sham affidavit doctrine into a license for a trial court to disbelieve an affidavit based upon other summary judgment evidence. There is no legal doctrine by which we can ignore that Lujan and the Corporation are separate legal entities. There is no authority for equating an IRS “paper” transfer for tax incentives and a State of Texas transfer of legal title.
Although I disagree with the sham affidavit doctrine, I more strongly disagree with our expanding the doctrine to reach these facts. We will create confusion about when trial courts are free to strike summary judgment affidavits they do not believe. The answer should remain, “Never.”
I would hold that the trial court erred in disregarding Lujan’s affidavit[14] and, *450 therefore, erred in granting Navistar’s summary judgment.

. In his affidavit, Lujan swore, “At no time have I transferred my assets and liabilities of [sic] Texas Wholesale Flower Company. I did not transfer ownership of my trucks nor my business to a corporation.” Inasmuch as the Majority opinion begins by describing Lujan as "a purchaser of trucks,” we know that unless he sold the trucks, Lujan is the proper party plaintiff to sue for breach of the warranty.

. The adjective "sham” means bogus or false. New Oxford American Dictionary 1604 (3d ed.2010).

. See Farroux v. Denny's Rests., Inc., 962 S.W.2d 108, 111 (Tex.App.—Houston [1st Dist.] 1997, no pet.).

. The sham affidavit doctrine is traced by most scholars to Perma Research & Development Co. v. Singer Co., 410 F.2d 572 (2d Cir.1969). See, e.g., Randy Wilson, The Sham Affidavit Doctrine in Texas, 66 Tex. B.J. 962, 964 (2003). However, the Farroux court attributed the expression "sham affidavit” to Bank of Illinois v. Allied Signal Safety Restraint Systems, 75 F.3d 1162, 1168-69 (7th Cir.1996). See Farroux, 926 S.W.2d at 111.

. Navistar did not point to any testimonial declaration of Lujan to support the application of the Mendoza test and none exists in this record.

. Although no Texas court has yet determined whether the trial court possesses the discre- ' tion to reject the "explanation,” federal courts do' have that discretion and require a plausir ble or sufficient explanation. See, e.g., Baer v. Chase, 392 F.3d 609, 623-24 (3d Cir.2004) (noting that "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict”); see also Doew Dallas Indep. Sch. Dist., 220 F.3d 380, 386 (5th Cir.2000) (holding that the explanation for a contradictory summary judgment affidavit must be sufficient),

. Randall is actually a faithful application of the Texas view of conflicting summary judgment evidence. The summary judgment standard requires that courts (a) credit any evidence favorable to the nonmovant that a jury could; and (b) disregard any contrary evidence. See Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex.2006).

. But, the Texas Penal Code is available to punish such perjury. Section 37.02(a)(1) provides, in pertinent part, that a “person commits an offense if, with intent to deceive and with knowledge of the statement's meaning ... he makes a false statement under oath or swears to the truth of a false statement previously made.” Tex. Penal Code Ann. § 37.02(a)(1).

. After the trial court struck Lujan's affidavit as a sham, Lujan himself filed the entire deposition transcript, as an attachment to his motion for new trial in an effort to persuade the court that there were no conflicts in his testimony. Far from contradictory, the Lujan deposition could not be more consistent on Lujan’s ownership of the trucks:
Q. These vehicles were purchase by you individually, right?
A. What do you—do you mean five different contracts?
Q. No. The vehicles, the CF600’s, they were purchased by Albert—
A. Me personally? ■ Yes.
Q. They weren’t purchased by the corporation; they were purchased by you?
A. No.
Q. Did you ever transfer title of those trucks to the corporation?
A. No.
Q. Did you sell or lease the trucks to the corporation?
A. No.
(emphasis supplied). Lujan even testified that Navistar sued Lujan personally to repossess the subject trucks.

. The Majority suggests that Herrera v. CTS Corp., 183 F.Supp.2d 921 (S.D.Tex.2002), expanded the doctrine under analogous facts. I disagree. The Herrra court did not extend the sham affidavit doctrine beyond the Farroux pattern. Herrera, suing ' for disability discrimination, gave deposition testimony about the physical requirements of his job and then filed an affidavit in opposition to a motion for summary judgment in which he attempted to vary the job duties to establish that he "could perform the essentials of his job.” Id. at 928. The district court .disregarded the affidavit "[bjecause the assertions made in Herrera's affidavit impeach his prior sworn testimony without explanation of that conflict.” Id. at 928-29. The Herrera court simply noted that there is also "an apparent inconsistency” in the affidavit and Herrera’s Social Security questionnaire, but the court did not extend the sham áffidavit doctrine to the questionnaire. Id. at 929. And even if the Herrera court had relied upon Herrera’s questionnaire, the case would not be analogous because in this case none of the items relied upon are from Lujan himself.

. The Majority notes that .Navistar argued that Lujan made a judicial admission; but the Majority does not hold that any of the Corporation’s pleadings or arguments or tax returns are, in fact, Lujan judicial admissions—be *446 cause they are not as a matter of law, A plaintiff can plead himself out of court, See Tex. Dep't of Con. v. Herring, 513 S.W.2d 6, 9 (Tex.1974). But, neither Navistar nor the Majority cite any authority for holding that an Intervenor may plead a plaintiff out of court, regardless of the relationship between the In-tervenor and the Plaintiff.

. Though there is no conflict between the Section 351 Election form and Lujan's affidavit, the Majority nonetheless criticizes Lujan for not explaining "the myriad discrepancies between his averments and the position his solely-owned corporation and his own counsel previously took before the court on the material issue of whether Lujan or his corporation owned the assets and claims that are the basis of Lujan's suit.” I disagree. Lujan did explain any surface discrepancy. First, in his response to Defendants’ Second Motion for Summary Judgment, Lujan specifically explained that "the election is not recognized under Texas law as an instrument to effect nor as enforceable evidence of such a transfer.” At the hearing on the motion for summary judgment, Lujan’s counsel argued that the Section 351 exchange is not evidence of an actual legal transfer. And at that same hearing, counsel went further in explaining his own prior statements; he had assumed his client followed through with a legal transfer but stated that he "misunderstood the true facts.”

. There is no summary judgment evidence that the Corporation signed and filed the referenced tax return under penalty of perjury. The record contains unsigned taxpayer copies. And there is no testimony that the unsigned taxpayer copy was signed and filed at any time. We may not indulge the inference, against the nonmovant, that the tax return was signed and filed. See Cantey Hanger, LLP v. Byrd, 467 S.W.3d 477, 481 (Tex.2015) (noting the -well-known summary judgment standard requiring that we indulge "every reasonable inference and resolve any doubts in the nonmovant’s favor”). Thus, the penalty of perjury did not attach to any statements made in the unsigned tax return. See In re Lee, 186 B.R. 539, 541 (Bankr.S.D.Fla.1995) ("The U.S. Tax Courts have consistently held that an unsigned tax return is no return at all, because an unsigned tax return would be insufficient to support a perjury charge based on a false return.”).

. The trial court also struck Lujan’s affidavit as (a) conclusory and (b) one made in bad faith; The Lujan ownership affidavit that he did not "transfer ownership of my trucks nor my business to a corporation” is not conclu-sory. See, e.g., Ortega v. Cash, 396 S.W.3d 622, (holding that a bank officer’s testimony that an “agreement and account was, on 8/18/2009 sold, transferred and set over unto *450 CACH, LLC” is not conclusory); see also Prudential Ins. Co. of Am., Inc. v. Black; 572 S.W.2d 379, 380 (Tex.Civ.App.—Houston [14th Dist.] 1978, no writ) (allowing a partner in a partnership to testify to the sale and assignment of a lease without the underlying sale and assignment documents). The Lujan ownership affidavit could not be stricken under Rule 166a(h) as made in bad faith because striking such an affidavit is not a reme-dy for a bad-faith filing, as outlined above. Thus, I-would find error in striking the affidavit on the alternate bases as well.