Affirmed in Part and Reversed and Remanded in Part and Memorandum
Opinion filed December 9, 2008








Affirmed in Part and Reversed and Remanded in Part and Memorandum Opinion filed December 9, 2008.

 

 

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00206-CV

NO. 14-07-00396-CV

_______________

 

PADDY ARGOVITZ, Appellant

 

V.

 

JERRY ARGOVITZ, Appellee

                                                                                                                                               


On Appeal from the 309th District Court

Harris County, Texas

Trial Court Cause No.
2005-05236;2005-05236A

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

In this dispute over the disposition
of assets in connection with a divorce, Paddy Argovitz appeals an order
granting summary judgment in favor of Jerry Argovitz in Cause Number
14-07-00396-CV (the AForfeiture Appeal@).  Paddy also appeals an order
granting summary judgment in favor of Jerry in Cause Number 14-07-00206-CV (the
AFiduciary Duty Appeal@). We affirm in part and reverse and
remand in part. 








Overview

Paddy and Jerry Argovitz acquired
extensive assets during their marriage.  The disposition of these assets in
connection with their divorce involved several steps.  

After multiple mediation conferences,
the parties executed a mediated settlement agreement on January 9, 2004.  The
trial court held a hearing regarding a proposed divorce decree on April 8,
2004.   Because Paddy claimed that the proposed divorce decree did not
accurately incorporate the mediated settlement agreement=s terms, and that the settlement
agreement failed to address certain matters, the trial court did not sign the
submitted decree at the April 8 hearing.  Instead, the trial court signed an
order on April 23, 2004 directing the parties to submit their drafting disputes
to binding arbitration.  Paddy, Jerry, and their respective counsel arbitrated
their disputes at a hearing on May 7, 2004.  The arbitrator signed the Decision
and Award of Arbitrator on May 11, 2004.  The trial court signed the Final
Divorce Decree on July 30, 2004, which incorporated the arbitrator=s rulings.

The two appeals before us arise from
post-divorce disputes between Paddy and Jerry regarding (1) the forfeiture of
certain trust property by Paddy; and (2) the operation, management, and
accounting of jointly held trust property by Jerry as trustee.  

The first dispute focuses on whether
Paddy forfeited her rights to certain jointly held assets after failing to make
a cash call required by the Final Divorce Decree. Paddy contends that she was
not required to make a cash call because Jerry=s cash call was improper under the
Final Divorce Decree. 








The second dispute involves Jerry=s management and liquidation of
certain jointly owned trust assets.  Under the Final Divorce Decree, Jerry was
appointed trustee for Paddy in connection with Paddy=s one-half undivided interest in
certain assets.  Jerry was to manage and liquidate these jointly owned assets;
he also maintained a separate bank account, the Argovitz Asset Management
Account, to pay for expenses relating to these assets.  After the sale of one
asset, Jerry made two payments before disbursing Paddy=s portion of the net sale proceeds. 
Paddy contends that Jerry should not have made these payments before
calculating her one-half portion of the sale proceeds, and that he failed to
provide her with an adequate accounting explaining these payments. 

Factual Background

A.        The
Forfeiture Appeal

Jerry managed the parties= jointly owned assets as required by
the Final Divorce Decree.  The Final Divorce Decree contains an AOperating Trust Provisions@ section providing that the parties
own certain assets as tenants in common.  The provision also states that A[b]ecause these properties are
difficult to evaluate, may periodically require cash contributions, and may
periodically be sold, refinanced, or forfeited . . . , IT IS ORDERED that JERRY
ARGOVITZ shall act as trustee for PADDY ARGOVITZ in connection with [her]
one-half undivided interest in the properties.@

Pursuant to the Final Divorce Decree,
Jerry and Paddy each were required to deposit $25,000 into the Argovitz Asset
Management Account to pay expenses related to the jointly owned assets
described in the Final Divorce Decree as they became due.  The Final Divorce
Decree further provided: 

that such Asset Management Account shall be maintained
in the name of JERRY ARGOVITZ and shall be used by JERRY ARGOVITZ to pay actual
expenses related to any project related to the above listed jointly held assets
while he manages these assets.  When the Asset Management Account reaches
$10,000.00, IT IS ORDERED that each party shall deposit another $20,000.00 into
the Asset Management Account within ten days of notification of the balance. 
For a period of eighteen months from the date this Final Decree of Divorce is
signed or until all of the jointly held assets are disposed, whichever occurs
earlier, IT IS ORDERED that JERRY ARGOVITZ shall be authorized to withdraw
$3,000.00 from such Asset Management Account each month for his overhead
expenses related to his management of the assets.  Funds held in the Asset
Management Account for the purpose of paying income taxes shall not be counted
as a balance in the account for the purpose of the $10,000.00 minimum balance
provisions in this paragraph.  In the event either party fails to contribute to
this Asset Management Account . . . that party=s interest in all of the [specifically described] jointly held assets
shall be forfeited to the other party.  If a party is in default, such
defaulting party shall be provided written notice and given an opportunity of
at least ten days to fully cure such default.








On September 21, 2004, Jerry sent a
letter to Paddy stating that the first cash call was due.  Jerry asked her to
deposit $25,000 in the Asset Management Account because it was $9,400 in the
red.  Jerry deposited $25,000 in the account; Paddy failed to do so within 10
days of notification.  Jerry sent Paddy a ANotice of Right to Cure@ on October 5, 2004, stating that
Paddy was in default and giving Paddy 10 days to make the cash call as required
by the Final Divorce Decree.  On October 18, 2004, Paddy=s counsel sent a letter to Jerry=s counsel asking him to explain when
and how Paddy breached her agreement to fund the Asset Management Account. 
Jerry=s counsel responded by letter on
October 21, 2004, attaching the September 21 and October 5 letters Jerry
already had sent to Paddy.  

Five months later, Jerry received a
$20,000 check dated March 21, 2005 from Paddy.  On March 28, 2005, Jerry=s counsel sent a letter to Paddy=s counsel returning Paddy=s check; the letter asserted that
Paddy was five months late with payment and in default under the Final Divorce
Decree.  Jerry=s counsel also included Jerry=s Original Counter-Petition for
Declaratory Judgment, in which he asked the trial court to sign a judgment
declaring that Paddy had forfeited her rights in the jointly held assets Jerry
was managing under the Final Divorce Decree by failing to make required cash
calls. 

B.        The
Fiduciary Duty Appeal

Paddy and Jerry agreed to resolve the
division of their marital assets and liabilities on January 9, 2004 after
several mediation conferences.  Jerry submitted an inventory listing Jerry=s and Paddy=s assets.  One asset was a 50 percent
interest in an entity called Land Baron West LLC (ALBW@).  








At the time of the divorce and
mediation, Paddy and Jerry jointly owned a 50 percent interest in LBW; Kevin
Kean owned the remaining 50 percent interest.  In turn, LBW joined Lakes
California Land Development, Inc. (ALakes@) to form a real estate venture, 2022
Ranch LLC (A2022 Ranch@).  LBW and Lakes each owned a 50 percent interest in 2022
Ranch, which was created to purchase 2,022 acres located at Honey Springs
Ranch.  In order to fund more expenditures, 2022 Ranch had required additional
capital contributions.  Lakes contributed its portion and also contributed
$675,000 on behalf of LBW.  Thus, at the time of the January 2004 mediation,
LBW owed Lakes $675,000.  

There was an existing contract in
January 2004 to sell 1,978 acres of 2022 Ranch=s land to Riverside Land
Conservancy.  LBW and Lakes agreed that LBW would reimburse Lakes for Lakes= prior $675,000 contribution from LBW=s share of the sale proceeds.  Paddy
and Jerry also were litigating a lawsuit involving title issues with the 2022
Ranch acreage; the parties refer to this as the AChicago Title suit.@

The Final Divorce Decree authorized
Jerry to manage and liquidate certain jointly owned assets, including the
existing contract to sell 1,978 acres of 2022 Ranch=s land.  The marital estate,
including money from the acreage sale, was to be divided between Jerry and
Paddy under the Final Divorce Decree.  Jerry was awarded separate property as
follows:

With the exception of one-half of the parties= portion of the net cash proceeds from the existing
contract to sell the 2,022 acres located at Honey Springs Ranch to Riverside
Land Conservancy, which is awarded to PADDY ARGOVITZ . . . JERRY ARGOVITZ is
awarded the remainder of the parties=
50% interest (which is 100% of the remaining community interest) in the limited
liability corporation known as Land Baron West, LLC, including but not limited
to all real property, assets, contingent assets, furniture, fixtures,
machinery, equipment, inventory, cash, receivables, accounts, goods, supplies,
claims and causes of action, debts and liabilities and contingent debts and
liabilities; all personal property . . . ; and all rights and privileges, past,
present, or future, arising out of or in connection with the operation of the
business.

 

The following assets were awarded to
Paddy as her separate property:

One-half of the parties= portion of the net cash proceeds from the existing contract to sell
the 2,022 acres located at Honey Springs Ranch to Riverside Land Conservancy
(after payment to JERRY ARGOVITZ for funds advanced by him).  This contingent
asset shall be operated and managed by JERRY ARGOVITZ subject to Section 13 in
this Final Decree of Divorce and subject to the terms of the Promissory Note in
the amount of $1,000,000.00 payable by PADDY ARGOVITZ to JERRY ARGOVITZ.

 








After the sale of 1,978 acres to
Riverside Land Conservancy was completed, Jerry paid $675,000 to Lakes to
reimburse it for Lakes= prior capital contribution to 2022 Ranch on behalf of LBW. 
Jerry also paid $650,000 to himself to reimburse himself for prior advances he
made to LBW.  Jerry then distributed to Paddy her one-half of the remaining net
proceeds from the sale to Riverside Land Conservancy.  A dispute arose between
Paddy and Jerry regarding whether Jerry properly made payments from the sale
proceeds without properly allocating certain expenses for the remaining 44
acres of 2022 Ranch; proceeds from the later sale of these 44 acres; and
expenses paid out of community funds for the Chicago Title suit.  This dispute
prompted Paddy to sue Jerry for breach of fiduciary duty, accounting, and a
declaratory judgment.

Procedural Background

After Paddy and Jerry signed a
mediated settlement agreement on January 9, 2004, disputes arose regarding the
drafting of a divorce decree.  In accordance with the mediated settlement
agreement and based upon the trial court=s order signed April 23, 2004, these
drafting disputes were submitted to binding arbitration.  

On May 6, 2004, Paddy filed a writ of
mandamus asking this court to compel the trial court to set aside its orders
(1) finding that the parties= agreement was a binding mediated settlement agreement; and
(2) referring the case to arbitration pursuant to the mediated settlement
agreement.  In re Argovitz, No. 14-04-00437-CV, 2004 WL 1058946 (Tex.
App.CHouston [14th Dist.] May 7, 2004,
orig. proceeding [mand. denied]).  This court denied Paddy=s petition for writ of mandamus on
May 7, 2004.  Id.  Paddy attempted to appeal the trial court=s order referring the case to
arbitration, but then filed a motion to dismiss the appeal on May 6, 2004
because the trial court=s order was not appealable.  This court granted Paddy=s motion and dismissed the appeal on
May 13, 2004.  Argovitz v. Argovitz, No. 14-04-00436-CV, 2004 WL 1066681
(Tex. App.CHouston [14th Dist.] May 13, 2004, no pet.)(mem. op.).








On May 7, 2004, Paddy and Jerry
together with their respective counsel appeared at the scheduled arbitration
hearing.  The arbitrator signed the Decision and Award of Arbitrator on May 11,
2004.  On July 30, 2004, the trial court signed the Final Divorce Decree based
on the mediated settlement agreement and the incorporated Decision and Award of
Arbitrator.  Paddy then filed a notice of appeal on August 30, 2004.  Paddy
contended on appeal that (1) she withdrew her consent to the mediated
settlement agreement before the Final Divorce Decree was signed; and (2) her
initial consent to the mediated settlement agreement was fraudulently induced. 
Argovitz v. Argovitz, No. 14-04-00885-CV, 2005 WL 2739152, at *1 (Tex.
App.CHouston [14th Dist.] Oct. 25, 2005,
no pet.)(mem.op).  This court dismissed Paddy=s appeal on October 25, 2005, and
held that Paddy was estopped to challenge the trial court judgment because she
voluntarily accepted benefits under that judgment.  Id. at *1-5.

Paddy then sued Jerry, leading to the
two appeals presently before this court.  In her live pleadings, Paddy claimed
that Jerry breached his fiduciary duty as a trustee; asked the trial court to
order Jerry to give an accounting because he failed to provide an adequate
accounting; and asked for a declaratory judgment regarding Aher rights and legal relations  in
respect to the trust as well as the trust subject matter.@  On March 28, 2005, Jerry filed a
counter-claim against Paddy for a declaratory judgment establishing that, under
the terms of the Final Divorce Decree, Paddy had forfeited her rights to
certain jointly held properties because she failed to make a required cash call
to the Argovitz Asset Management Account.

On January 9, 2006, Jerry filed his
Amended Motion for Summary Judgment or, in the alternative, Partial Summary
Judgment on Paddy=s claims for breach of fiduciary duty, accounting, and
declaratory judgment.  Jerry=s motion consisted of both a traditional motion for summary
judgment under Rule 166a(c) and a no-evidence motion under Rule 166a(i).  The traditional
summary judgment motion addressed Paddy=s claims for breach of fiduciary
duty, an accounting, and a declaratory judgment.  Jerry=s no-evidence summary judgment motion
addressed Paddy=s claims for breach of fiduciary duty and accounting.








In the traditional summary judgment
portion, Jerry contended there was no breach of fiduciary duty or lack of
accounting as a matter of law because (1) Paddy=s own expert testified that Jerry has
been forthcoming and has shown him all requested documents with respect to the
payments Jerry made to Lakes and himself; (2) Paddy=s expert refuted her allegations that
Jerry (a) failed to properly account for his management and distribution of
property, (b) falsified and manipulated the accounting to favor himself, (c)
withheld funds to which Paddy was entitled and diverted these funds, and (d)
failed to produce documentation that he in fact advanced the $650,000 for which
he reimbursed himself; (3) Jerry properly accounted for the $650,000 and
$675,000 amounts in the inventory he provided to Paddy and her expert before the
mediation; and (4) Paddy=s expert established that (a) Jerry provided Paddy with a
timely accounting upon request and with supporting documentation, and (b) there
were no documents or evidence to support Paddy=s assertion that Jerry used improper
accounting to deprive her of assets awarded to her in the Final Divorce Decree.

In the alternative, Jerry requested a
no-evidence summary judgment because Paddy failed to present evidence to
sustain her claim for breach of fiduciary duty and her claim that Jerry failed
to provide an accounting.








Paddy responded to Jerry=s summary judgment motion by arguing
that Jerry owed a fiduciary duty to Paddy, that he breached his fiduciary duty,
and that damage resulted from his breach.  Paddy contended that Jerry breached
his fiduciary duty and violated the Final Divorce Decree when he paid $650,000
to himself because this amount was advanced by Jerry, during the parties= marriage, to LBW=s capital account for 2022 Ranch with
community property funds and not Jerry=s separate property.  Paddy also
claimed that she was entitled to one-half of the net cash proceeds from the
sale of the entire 2,022 acres at Honey Springs Ranch, and not just the net
proceeds from the existing contract to sell 1,978 acres to Riverside Land
Conservancy.  According to Paddy, Jerry breached his fiduciary duty when he
failed to disburse any of the sales proceeds from a subsequent sale of the
remaining 44 acres of 2022 Ranch.

Paddy alternatively C and as part of her breach of
fiduciary duty argument C contended that two ambiguities exist in the Final Divorce
Decree.[1]  First, she
argued that the reference in the Final Divorce Decree regarding reimbursement
of funds Aadvanced by him@ was ambiguous because it  reasonably could mean that Jerry
advanced community property funds, or that Jerry advanced his separate property
funds.  The second asserted ambiguity focused on the Final Divorce Decree=s language providing that the parties
should receive one-half of the net cash proceeds from the Aexisting contract to sell the 2,022
acres located at Honey Springs Ranch to Riverside Land Conservancy.@  Paddy contended an ambiguity exists
because the contract with Riverside Land Conservancy encompassed only 1,978 of
the 2,022 acres.

Within Paddy=s ambiguity discussion, Paddy
asserted that Jerry breached his fiduciary duty by making payments of $650,000
and $675,000 from the sale proceeds of 1,978 acres at Honey Springs Ranch
before allocating to her one-half of the net proceeds.  She contends that
substantial portions of both amounts were used for expenses unrelated to this
asset.  Paddy argued that the A$650,000 and $675,000 in issue were advanced by the community
estate of the parties and/or by Lakes on behalf of the community estate for: a.
[m]ortgage and taxes on the entire 2,022-acre parcel; b. [t]o fund the Chicago
Title lawsuit; and c. [o]ther expenses related to both the 1,978 and 44 acres
comprising [2022 Ranch].@ According to Paddy, Jerry failed Ato segregate what part of either the
$650,000 or $675,000 should be allocated between the 3 components of 2022
Ranch: (a) 1,978 acres, (b) 44 acres, (c) the Chicago Title suit.@  Thus, Paddy contends that Jerry
breached his fiduciary duty by self-dealing, and by failing to account to and
deal with Paddy fairly and honestly.








Jerry filed a reply to Paddy=s response to his summary judgment
motion, arguing that there is no genuine issue of material fact concerning whether
he breached his fiduciary duty to Paddy by not properly accounting for the
$650,000 he advanced to LBW for 2022 Ranch, or by failing to provide specific
accounting to establish that the $675,000 offset was related solely to the
jointly owned portion of the 2022 Ranch acreage.  Jerry also asserted that no
genuine fact issue exists regarding Paddy=s claimed entitlement to half of the
parties= net cash proceeds from the sale of
the entire 2,022 acres, and that no ambiguity exists in the Final Divorce
Decree. 

On August 11, 2006, the trial court
signed an interlocutory order granting Jerry=s summary judgment motion and signed
an interlocutory judgment decreeing that Paddy take nothing on her claims for
breach of fiduciary duty, accounting, and declaratory judgment.  On September
19, 2006, the trial court signed an order severing this interlocutory summary
judgment from Jerry=s remaining counter-claim for declaratory judgment; with this
severance, the summary judgment order in favor of Jerry became final and
appealable.  On October 12, 2006, Paddy filed a notice of appeal challenging
the order granting summary judgment to Jerry on Paddy=s claims for breach of fiduciary
duty, accounting, and declaratory judgment.  This appeal was docketed as Cause
Number 14-07-00206-CV.

On October 23, 2006, Jerry filed a
motion for summary judgment on his sole remaining claim seeking a declaration
that Paddy forfeited her rights to certain jointly held properties under the
Final Divorce Decree because she failed to make a required cash call.  Paddy
filed no summary judgment response; instead, on November 2, 2006, she filed a
Motion to Abate Jerry=s Counter-Petition for Declaratory Judgment or, in the
alternative, Request for Continuance Regarding Response to Motion for Summary
Judgment. 

Jerry filed a response and objection
to Paddy=s motion to abate and request for
continuance on November 21, 2006.  On that same day, the trial court held a
hearing on Jerry=s motion for summary judgment and Paddy=s motion to abate.  The trial court
also gave Paddy until December 1, 2006 to compile case law in support of her
motion to abate.








On November 22, 2006, Paddy filed a
(1) First Amended Motion to Abate Jerry=s Counter-Petition for Declaratory
Judgment; (2) Motion for Leave to Amend Motion for Continuance and Filing of
Amended Motion for Continuance to Respond to Jerry=s Motion for Summary Judgment; (3)
Motion for Leave to File Late Response to Jerry=s Motion for Summary Judgment; and
(4) Response to Jerry=s Motion for Summary Judgment.  Jerry filed a Response and
Objection to Paddy=s Motions and to Paddy=s Response to Jerry=s Motion for Summary Judgment on
November 30, 2006.

The trial court held a hearing on
December 1, 2006 on Paddy=s motion to abate and allowed Paddy Ato present evidence of proffer on
both the continuance and the abatement.@ The trial court did not hear
substantive argument on Jerry=s summary judgment motion at that time.  On February 23,
2007, Paddy filed a Supplemental Motion for Leave to File Late Supplemental
Response to Jerry=s Motion for Summary Judgment and a Supplemental Response to
Jerry=s Motion for Summary Judgment.  

The trial court signed an order
granting Jerry=s summary judgment motion on March 16, 2007.  Paddy filed a notice of
appeal challenging the trial court=s order on April 9, 2007, docketed in
this court as Cause Number 14-07-00396-CV.  On February 6, 2008, Paddy filed
her counsel=s affidavit with an attached February 26, 2007 letter drafted by her
counsel and addressed to the trial judge.  In the letter, Paddy=s counsel requested that the trial
judge set a hearing on Paddy=s supplemental motion for leave to file her late supplemental
response and on her supplemental summary judgment response of February 23,
2007.  The trial court did not set the requested hearing.  The trial court did
not expressly rule on any of Paddy=s motions filed on November 22, 2006
or her supplemental motion for leave and supplemental summary judgment response
filed on February 23, 2007.

Standard of Review








An appellate court applies de novo
review to a grant of summary judgment, using the same standard that the
trial court used in the first instance.  Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005). A party may move for a traditional summary
judgment after the adverse party has appeared or answered, and may move for a
no‑evidence summary judgment after an adequate time for discovery has
passed.  Tex. R. Civ. P. 166a(a), (i).

A traditional summary judgment may be
granted if the motion and evidence show there is no genuine issue of material
fact and the movant is entitled to judgment as a matter of law.  Tex. R. Civ.
P. 166a(c).  In reviewing a summary judgment we take as true all evidence
favorable to the nonmovant, indulge every reasonable inference in favor of the
nonmovant, and resolve any doubts in the nonmovant=s favor.  Sudan v. Sudan, 199
S.W.3d 291, 292 (Tex. 2006).  

The movant must establish his
entitlement to summary judgment on the issues expressly presented to the trial
court by conclusively proving all essential elements of his cause of action or
defense as a matter of law.  City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 678 (Tex. 1979).  The non‑movant must expressly present
to the trial court any ground that would defeat the movant=s right to a summary judgment by
filing a written answer or response to the motion, and if he fails to do so, he
may not later assign any new ground as error on appeal. Id. at 678‑79. 
However, a non‑movant needs no answer or response to the motion to
contend on appeal the grounds expressly presented to the trial court by the
summary judgment motion are insufficient as a matter of law to support the
judgment.  Id. at 678.








A no‑evidence motion for
summary judgment must be granted if (1) the moving party asserts that there is
no evidence of one or more specified elements of a claim or defense on which
the adverse party would have the burden of proof at trial; and (2) the
respondent produces no summary judgment evidence raising a genuine issue of
material fact on those elements.  See Tex. R. Civ. P. 166a(i).  In
reviewing a no‑evidence motion for summary judgment, we view all of the
summary judgment evidence in the light most favorable to the non‑movant, Acrediting evidence favorable to that
party if reasonable jurors could, and disregarding contrary evidence unless
reasonable jurors could not.@  Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582
(Tex. 2006).  The non‑moving party is not obligated to marshal its proof,
but it is required to present evidence that raises a genuine fact issue on the
challenged element.  Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215
(Tex. 2002).

When the trial court does not specify
the basis for its summary judgment ruling, the appellant must show that each
independent ground alleged is insufficient to support the judgment.  Star‑Telegram,
Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995). 

Analysis

As noted earlier, this case involves
two appeals stemming from the trial court=s orders granting Jerry=s two summary judgment motions.[2] 
We address each appeal in turn.

A.        The
Forfeiture Appeal 

Paddy raises five issues in
connection with the Forfeiture Appeal.  

In her first three issues, Paddy
contends that Jerry was not entitled to summary judgment as a matter of law
because Jerry=s summary judgment evidence shows that (1) Athe cash call and notice of
forfeiture were not performed by Jerry@ in accordance with the Final Divorce
Decree and therefore are without legal effect; (2) there is no factual basis to
support the amount of the cash call; and (3) the cash call did not comport with
the Texas Trust Code and did not provide Paddy with reasonable notice of the
facts Jerry relied on to calculate the Argovitz Asset Management Account
balance to make the demand.  

In her fourth issue, Paddy contends
that the trial court abused its discretion by impliedly overruling her Motion
for Leave to File Late Response to Jerry=s Motion for Summary Judgment.  See
Tex. R. App. P. 33.1(a)(2)(A) (AAs a prerequisite to presenting a complaint for appellate
review, the record must show that the trial court ruled on the request,
objection, or motion, either expressly or implicitly . . . .@).  She argues that she established Agood cause, that the failure to file
a response was not intentional or as a result of indifference and the allowance
of a late response would have occasioned no undue delay or otherwise injury to
Jerry.@  








In her fifth issue, Paddy contends
that the trial court=s failure to set a hearing before impliedly overruling her
Supplemental Motion for Leave to File Late Supplemental Response to Jerry=s Motion for Summary Judgment and her
Supplemental Response to Jerry=s Motion for Summary Judgment constitutes a denial of Paddy=s right to due course of law and
access to the courts. She contends that Local Rule 3.3.4 of the Rules of the
Civil Trial Division Harris County Courts requires a hearing.

It is undisputed that Paddy did not
file a timely summary judgment response.  A non‑movant need not file a summary
judgment response to contend on appeal the grounds expressly presented to the
trial court by the motion are insufficient as a matter of law to support the
judgment.  Clear Creek Basin Auth., 589 S.W.2d at 678.  However,
the non‑movant must expressly present to the trial court any ground,
other than insufficiency as a matter of law, that would defeat the movant=s right to a summary judgment by
filing a written answer or response to the motion; the non-movant who fails to
do so may not later assign any new ground as error on appeal.  Id.  As a
threshold matter, we will resolve Paddy=s fourth and fifth issues to
determine which of Paddy=s remaining issues need to be addressed on appeal.       

1.         Paddy=s Motion for Leave to File Late
Response

In her fourth issue, Paddy argues
that the trial court abused its discretion by failing to grant leave to file an
untimely response to Jerry=s summary judgment motion after the hearing on his motion. 
The trial court overruled Paddy=s motion for leave to file an untimely response by
implication.  See Tex. R. App. P.  33.1(a).








A trial court=s ruling on a motion for leave to
file a late summary judgment response is reviewed for an abuse of discretion.  Carpenter
v. Cimarron Hydrocarbons Corp., 98 S.W.3d 682, 686 (Tex. 2002).  A trial
court abuses its discretion when it acts without reference to any guiding rules
or principles.  Id. at 687.  A motion for leave to file a late summary
judgment response should be granted when the nonmovant establishes good cause
by showing that (1) the failure to timely respond was not intentional or the
result of conscious indifference, but the result of an accident or mistake; and
(2) allowing a late response will occasion no undue delay or otherwise injure
the party seeking summary judgment.  Id. at 688.

We conclude that the trial court
acted within its discretion when it denied leave to file an untimely summary
judgment response.  Paddy=s fourth issue is merely a conclusory statement that her
motion established good cause for filing a late response, and that the trial
court therefore abused its discretion in failing to grant her motion.  Although
Paddy had notice of Jerry=s summary judgment motion filed on October 23, 2006, she did
not file a timely response to his motion.  Instead, Paddy filed a Motion to
Abate Jerry=s Counter-Petition for Declaratory Judgment or, in the alternative, Request
for Continuance Regarding Response to Motion for Summary Judgment on November
2, 2006.  The trial court held a hearing on Jerry=s motion for summary judgment and
Paddy=s motion to abate on November 21,
2006.  At that time, Paddy argued her motion to abate.  Only after the hearing
did Paddy file her Motion for Leave to File Late Response.  

Paddy=s motion for leave does not establish
good cause for failure to file a timely summary judgment response.  To the
contrary, her motion establishes that her failure to respond timely was
intentional.  Paddy waited for Jerry=s attorney to make an appearance in
the breach of fiduciary duty appeal so she could request an agreement to
accelerate the appeal; she argued that Jerry=s declaratory judgment action was
dependent upon the fiduciary duty appeal.  She then argued to the trial court
that the declaratory judgment action and summary judgment motion should be
abated because they were inseparable from the appeal.  The trial court never
granted Paddy=s request to abate.  Paddy asserts that her failure to file a response
was based on her belief that Jerry=s declaratory judgment action would
be abated pending the breach of fiduciary duty appeal.  








The record demonstrates that Paddy=s failure to file a timely response
to Jerry=s summary judgment motion was a
conscious strategic choice; it was not the result of an accident or mistake. 
She opted to pursue abatement of Jerry=s declaratory judgment action instead
of filing a timely summary judgment response.  Her strategy choice did not
succeed.  Paddy=s asserted belief that this strategy choice would succeed
does not establish good cause.  Further, Paddy=s motion failed to support her
assertion that granting her motion for leave would not cause delay or injury to
Jerry.  Under these circumstances, the trial court acted within its discretion
in implicitly overruling her Motion for Leave to File Late Response to Jerry=s Motion for Summary Judgment.  

We overrule Paddy=s fourth issue.

2.         Hearing
on Paddy=s Supplemental Motion for Leave

In her fifth issue, Paddy contends
that the trial court=s failure to set a hearing on her Supplemental Motion for
Leave to File Late Supplemental Response to Jerry=s Motion for Summary Judgment and her
Supplemental Response to Jerry=s Motion for Summary Judgment constitutes a denial of her
right to due course of law and access to the courts.  The trial court
implicitly denied Paddy=s motions.  See Tex. R. App. P. 33.1(a).

Paddy relies on Local Rule 3.3.4 of
the Rules of the Civil Trial Division Harris County Courts, which states as
follows: AOral Hearings. 
Settings for oral hearings should be requested from the court clerk.  The
notice of oral hearing shall state the time and date.@  309th (Tex.) Dist. Ct. Loc. R.
3.3.4 (Harris County).  Local Rule 3.3.4 provides that oral hearings should be
requested from the court clerk; it does not require the trial court to grant a
request for oral hearing.  








An oral hearing also is not required
under Texas Rule of Civil Procedure 166a.  See Martin v. Martin,
Martin & Richards, Inc., 989 S.W.2d 357, 359 (Tex. 1998).  AAn oral hearing on a motion for
summary judgment may be helpful to the parties and the court . . . but since
oral testimony cannot be adduced in support of or opposition to a motion for
summary judgment, an oral hearing is not mandatory.@  Id.  AUnless required by the express
language or the context of the particular rule, the term >hearing= does not necessarily contemplate
either a personal appearance before the court or an oral presentation to the
court.@  Id.  If no oral hearing is
required on a motion for summary judgment, it follows that no oral hearing is
required on a motion for leave to file a late supplemental response to a motion
for summary judgment.  See id.  

Because the trial court was not
required to grant Paddy=s request for oral hearing under Local Rule 3.3.4, the trial
court acted within its authority when it denied Paddy=s supplemental motion for leave to
file an untimely response to Jerry=s summary judgment motion and Paddy=s supplemental summary judgment
response without an oral hearing.  We overrule Paddy=s fifth issue.[3]     

3.         Sufficiency
of Jerry=s Summary Judgment Grounds

We have determined that the trial
court acted within its discretion in overruling Paddy=s Motion for Leave to File Late
Response.  In her appellate brief, Paddy acknowledges that Ain the absence of an answer to a
motion for summary judgment the standard for review of a summary judgment is
legal sufficiency.@  Therefore, Paddy can challenge on appeal only the
sufficiency as a matter of law of the express grounds presented in Jerry=s summary judgment motion.  See
Clear Creek Basin Auth., 589 S.W.2d at 678. 

In the absence of a summary judgment
response raising them, Paddy is precluded from raising on appeal the following
arguments: fraud; estoppel; waiver; accord and satisfaction; ambiguity;
variances between the Final Divorce Decree and the mediated settlement
agreement; the $25,000 cash call should have been limited to $20,000;
conditions precedent for the cash call; proper computation of the minimum
balance in the Argovitz Asset Management Account; failure to provide accounting
showing the basis for the cash call under the Trust Code; and breach of fiduciary
duty under the Texas Trust Code in connection with the forfeiture.  We do not
address these arguments.








We next turn to whether the grounds
presented to the trial court in Jerry=s summary judgment motion are
sufficient as a matter of law to support the judgment. As the movant, Jerry
must establish his entitlement to a summary judgment on the issues expressly
presented to the trial court by conclusively proving all essential elements of
his cause of action or defense as a matter of law.  Id. at 678. 

Jerry moved for summary judgment
requesting the trial court to issue a declaration that Paddy had forfeited
certain jointly owned assets to Jerry by failing to properly contribute to the
Asset Management Account as set forth in the Final Divorce Decree.  Jerry
contended that (1) he sent a letter to Paddy informing her that a cash call was
due pursuant to the Final Divorce Decree; (2) he did not receive the money from
Paddy within 10 days of notifying her of the amount due; (3) he then sent Paddy
a ANotice of Right to Cure@ letter stating that she was in
default under the Final Divorce Decree because she failed to send $25,000 he requested;
and (4) Paddy responded to the cash call five months later by sending him a
check for $20,000, but he returned the check.

a.         Jerry=s cash call

Jerry attached to his summary
judgment motion a letter he sent to Paddy on September 21, 2004, informing her
that the first cash call was due.  In the letter, Jerry asked her to deposit
$25,000 in the Asset Management Account: AAfter deducting the amount to set up
separate escrow accounts for income tax liabilities and your $20,000.00
N.I.G.C. License Fee;[4] as of
9/15/2004 AAMA would be approximately $9,400.00 negative.  Please send me a
check for $25,000.00 for deposit into AAMA and I will deposit the like amount.@

            The Final Divorce Decree
provides when and how Jerry was to make a cash call.  It specifically states
that the 








Asset Management Account shall be
maintained . . . to pay actual expenses related to any project related to . . .
jointly held assets while [Jerry] manages these assets.  When the Asset
Management Account reaches $10,000.00, IT IS ORDERED that each party shall
deposit another $20,000.00 into the Asset Management Account within ten days of
notification of the balance . . .  Funds held in the Asset Management Account
for the purpose of paying income taxes shall not be counted as a balance in the
account for the purpose of the $10,000.00 minimum balance provisions in this
paragraph.  In the event either party fails to contribute to this Asset
Management Account . . . that party=s interest in all of the . . .
jointly held assets shall be forfeited to the other party.  If a party is in
default, such defaulting party shall be provided written notice and given an
opportunity of at least ten days to fully cure such default.

There is no requirement under the
Final Divorce Decree for Jerry to provide an accounting under the Trust Code
before making a cash call.  Nonetheless, Jerry=s letter explained that A[a]fter deducting the amount to set
up separate escrow accounts for income tax liabilities and [Paddy=s] $20,000.00 N.I.G.C. License Fee;
as of 9/15/2004 AAMA would be approximately $9,400.00 negative.  Please send me
a check for $25,000.00 for deposit into AAMA and I will deposit the like
amount.@  

In addition to his cash call letter,
Jerry filed a summary judgment affidavit.  He stated that A[o]n September 21, 2004 I sent a
letter to Paddy Argovitz informing her that a cash call was due to be made by
her to the Asset Management Account pursuant to the Divorce Decree.@  As quoted above, the Final Divorce
Decree provides that a cash call is due when the Asset Management Account
reaches $10,000.  Jerry=s letter and affidavit show that the account balance passed
the threshold to require a cash call.  Paddy did not challenge the propriety or
admissibility of Jerry=s letter or his affidavit.  Therefore, Jerry proffered
legally sufficient evidence to establish that he made a cash call and notified
Paddy pursuant to the Final Divorce Decree when the Asset Management Account
reached the threshold for a cash deposit.

b.         Jerry=s notice of right to cure

After Paddy failed to deposit the
requested sum within 10 days of notification of the balance as required by the
Final Divorce Decree, Jerry sent Paddy a ANotice of Right to Cure@ on October 5, 2004.  The notice
stated that Paddy was in default and gave Paddy 10 days to make the cash call
as required by the Final Divorce Decree.  Paddy acknowledges receiving Jerry=s notice of default and right to
cure.  








In addition to the notice to cure
letter Jerry attached as evidence to his motion, Jerry also attached his
affidavit stating, AI did not receive the money from Paddy Argovitz I requested
in the September 21, 2004 letter and I sent Paddy Argovitz a Notice of Right to
Cure letter on October 5, 2004 asking again that she send in money to be
deposited into the Asset Management Account pursuant to the Decree.@

Jerry further provided his counsel=s affidavit with attached copies of
(1) an October 18, 2004 letter from Paddy=s counsel to Jerry=s counsel asking for an explanation
of when and how Paddy breached her agreement to fund the Asset Management
Account; (2) an October 21, 2004 response from Jerry=s counsel to Paddy=s counsel, attaching the two letters
Jerry had sent Paddy making the first cash call and then requesting she cure
her default.  Paddy did not challenge the propriety or admissibility of this
summary judgment evidence.

This evidence establishes as a matter
of law that Paddy received Jerry=s notice of her right to cure.

c.         Paddy=s failure to make the cash call

Paddy does not dispute that she
responded to the cash call five months after the deadline imposed by the Final
Divorce Decree.  After Jerry twice requested that Paddy make a cash call, Paddy
still had not deposited the money in the Asset Management Account.  Five months
after the deadline to make the cash call, Jerry received a $20,000 check dated
March 21, 2005 from Paddy.  On March 28, 2005, Jerry=s counsel sent Paddy=s counsel a letter returning Paddy=s check and explaining that Paddy was
five months late with payment and in default under the Final Divorce Decree. 
Jerry attached a copy of the check, his counsel=s letter returning Paddy=s check with an explanation that it
was sent too late, and his counsel=s affidavit as summary judgment
evidence.

Jerry also attached an affidavit
stating, AI did not receive any money from Paddy Argovitz until March 21, 2005 by
hand delivery to the guard gate at my house in the amount of $20,000.00.  I
sent this check to [my counsel] to return to Paddy Argovitz.@  This evidence establishes as a
matter of law that Paddy failed to make the cash call until months after her
right to cure deadline expired in October 2004.








Additionally, the Final Divorce
Decree clearly states that if a party fails to contribute to the Asset
Management Account as provided for in the Decree, that party forfeits his or
her interest in the jointly held assets to the other party.[5] 
Accordingly, there is legally sufficient evidence to support Jerry=s claim that Paddy failed to timely
make the cash call after a notice of default and right to cure, and, therefore,
forfeited her rights in the jointly held assets at issue under the Final
Divorce Decree.

We overrule Paddy=s issues in the forfeiture appeal.        

B.        The
Breach of Fiduciary Duty Appeal

Paddy raises five issues in
connection with the fiduciary duty appeal.  

In her first issue, Paddy contends
that Jerry was not entitled to summary judgment because the evidence shows that
Jerry breached his fiduciary duty to Paddy by (1) failing to give a timely
accounting of the trust in general and specifically with respect to the
$675,000 and $650,000 payments; (2) manipulating the accounting of the trust to
his personal benefit and to the detriment of Paddy; (3) wrongfully making a
cash call; and (4) wrongfully declaring a forfeiture.

Paddy argues in her second issue that
Jerry=s summary judgment evidence was
insufficient to support summary judgment because it was not clear, positive,
direct, credible, and free from contradictions and inconsistencies.  In her
third issue, Paddy lists evidence and record cites that she contends controverted
Jerry=s summary judgment evidence and
precluded the trial court from granting Jerry=s traditional summary judgment
motion.








In her fourth issue, Paddy asserts
that the summary judgment motion and evidence demonstrate Amaterial ambiguities and
inconsistencies in and between the Final Decree and the MSA which can only be
completely resolved by determination of the intent of parties which inherently
creates fact issues and as a matter of law precluded the trial court from
granting@ Jerry=s summary judgment motion.

Paddy contends in her fifth issue that
Jerry was not entitled to a no-evidence summary judgment because she presented
more than a scintilla of evidence that Jerry failed to timely  give an
accounting and breached his fiduciary duty by failing to correctly allocate
expenses between the sales of the 1,978-acre and 44-acre parcels of 2022 Ranch
for which she sustained monetary damages.

In the trial court, Jerry moved for
traditional summary judgment on Paddy=s claims for breach of fiduciary
duty, an accounting, and a declaratory judgment, contending that there was no
breach of fiduciary duty or lack of accounting as a matter of law because (1)
Paddy=s own expert testified that Jerry has
been forthcoming and has shown him all requested documents with respect to the
reimbursements Jerry made to Lakes and himself; (2) Paddy=s expert refuted her allegations that
Jerry (a) failed to properly account for his management and distribution of property,
(b) falsified and manipulated the accounting to favor himself, (c) withheld
funds to which Paddy was entitled and diverted these funds, and (d) failed to
produce documentation that he in fact advanced the $650,000 for which he
reimbursed himself; (3) Jerry properly accounted for the $650,000 and $675,000
amounts in the inventory he provided to Paddy and her expert before the
mediation; and (4) Paddy=s expert established that (a) Jerry provided Paddy with a
timely accounting upon request and with supporting documentation, and (b) there
were no documents or evidence to support Paddy=s assertion that Jerry used improper
accounting to deprive her of assets awarded to her in the Final Divorce Decree.

Jerry=s no-evidence summary judgment motion
addressed Paddy=s claims for breach of fiduciary duty and accounting; Jerry
contended that Paddy failed to present any evidence to sustain her claim for
breach of fiduciary duty and her claim that Jerry failed to provide an
accounting.








Paddy responded to Jerry=s summary judgment motion arguing
that Jerry breached his fiduciary duty when he paid $650,000 to himself because
this amount was advanced by Jerry to LBW with community property funds and not
Jerry=s separate property.  Paddy also
claimed that she was entitled to one-half of the net cash proceeds from the
sale of the entire 2,022 acres at Honey Springs Ranch, and not just the net
proceeds from the existing contract to sell 1,978 acres to Riverside Land
Conservancy.

Paddy alternatively contended that
ambiguities exist in the Final Divorce Decree. Within Paddy=s ambiguity argument, Paddy asserted
that Jerry breached his fiduciary duty by failing Ato segregate what part of either the
$650,000 or $675,000 should be allocated between the 3 components of 2022
Ranch: (a) 1,978 acres, (b) 44 acres, (c) the Chicago Title suit.@  Paddy pointed to her expert=s testimony that such accounting
would be inappropriate under accounting principles.  According to Paddy, Jerry
breached his fiduciary duty by self-dealing and by failing to account to and
deal with Paddy fairly and honestly.

As the non‑movant, Paddy was
required to expressly present to the trial court any ground, other than
sufficiency as a matter of law, that would defeat Jerry=s right to a summary judgment.  See
Clear Creek Basin Auth., 589 S.W.2d at 678.  If she failed to do so, she
may not assign any new ground as error on appeal.  Id.  Therefore, Paddy
is precluded from raising on appeal the following claims and  arguments she
failed to assert in her summary judgment response: fraud; declaratory judgment;
wrongfully made cash call; wrongful declaration of forfeiture; failure to
provide an accounting that comports with the Trust Code; failure to timely
provide an accounting; failure to provide an accounting within 90 days as
required by the Trust Code; failure to credit Paddy for reimbursements received
from Kevin Kean; variances between the Final Divorce Decree and mediated
settlement agreement; and ambiguities in the mediated settlement agreement.

We next address whether the trial
court erred by granting summary judgment in light of the grounds presented in
Jerry=s summary judgment motion and Paddy=s response.








1.         Breach
of Fiduciary Duty 

In her first issue, Paddy contends
that Jerry was not entitled to summary judgment on her claim for breach of
fiduciary duty because the evidence shows that Jerry breached his fiduciary
duty to Paddy by failing to give an accounting of expenses associated with the $675,000
and $650,000 payments, and by failing to properly allocate Ato his portion of the proceeds of the
1,978-acre sale the expenses related to the property awarded to him along with
related debt.@  Because Paddy=s third issue contains no substantive argument but merely
provides record cites pertaining primarily to her first issue, we will address
issues one and three together. 

Paddy predicates part of her breach
of fiduciary duty contention on the assertion that Jerry Aadmits not giving [to her] an
accounting of expenses of either the $675,000.00 or $650,000.00 reimbursements.@  She cites only the following
exchanges between Jerry and Paddy=s counsel at a receivership hearing
as support for her assertion:

COUNSEL: You=re aware of numerous requests for an
accounting of monies that have been received and reimbursement of expenses that
have been paid on  behalf of the joint held assets that we=ve been testifying to, correct?

JERRY ARGOVITZ: I=m aware of letters you have written
requesting some things, letters you have written saying you=re not going to sign the note until
she B until we see the records.  Your
mischaracterization and misunderstanding of the entire divorce decree, and I=ve never, you know, and I=ve made some hints to my lawyer you
was always B

*                                  *                                  *

COUNSEL: And that your duty is to
account for the beneficiary of all trust transactions?

JERRY ARGOVITZ: I=m aware of that.








COUNSEL: And have you accounted
regarding the reimbursement of the expenses of the 675,000 or the 650,000 that
were reimbursed to you and/or paid to Lakes?

JERRY ARGOVITZ: Yes, I have that
information.

COUNSEL: Have you provided that
documentation?

JERRY ARGOVITZ: I=ve not been asked to provide it, Mr.
Von Blon.

The cited exchanges do not raise a
fact issue or establish that Paddy requested an accounting and that Jerry
failed to provide it.  Therefore, we reject this part of Paddy=s breach of fiduciary duty argument.

Next, Paddy argues that Jerry
breached his fiduciary duty Aby failing to properly allocate to his portion of the proceeds
of the 1,978-acre sale the expenses related to the property awarded to him
along with related debt.@  According to Paddy, Jerry manipulated the accounting to his
benefit and to her detriment.  

It appears that Paddy refers only to
the accounting and allocation of expenses and debts relating to the $675,000
payment in connection with this argument.  The evidence Paddy cites in support
of her argument relates to the $675,000 payment Jerry made to Lakes after the 1,978-acre
sale C not to the $650,000 payment he made
to himself.  Paddy relies on the testimony of her expert, Bill Stewart, at the
March 15, 2005 receivership hearing and Stewart=s affidavit of January 26, 2006 to
support her assertion of improper allocation and accounting relating to the
$675,000 payment. 








Jerry counters that Paddy=s expert provided uncontroverted
evidence that Jerry provided a proper accounting and complied with general
accounting principles.  He relies on Stewart=s deposition testimony of May 11,
2005.  Jerry dismisses Paddy=s evidence, claiming that it Aamounts to no evidence of any
material fact issue@ because Paddy relies on Stewart=s earlier testimony at the March
receivership hearing.  According to Jerry, Paddy=s evidence is of no consequence
because, after the receivership hearing in March, Stewart clearly testified
that Jerry provided a proper accounting for the $675,000 cash call and that
Jerry=s accounting was in accordance with
generally accepted accounting principles.  However, Jerry does not address how
Stewart=s subsequent affidavit of January 26,
2006 C in which Stewart contradicts his May
deposition testimony C affects this issue and why it does not create a fact issue.

The following are relevant excerpts
from Stewart=s testimony and affidavit.  Paddy points to Stewart=s testimony at the March 15, 2005
receivership hearing.  Stewart testified in pertinent part:

COUNSEL: Now, the 2022, what we refer
to as 2022 acreage, the Honey Spring Ranch, are there several components of
that asset? 

STEWART: Yes, sir.

COUNSEL: What are those components?

STEWART: Well, there was a large
tract of land in which Mrs. Argovitz participated.  There was another smaller
tract of land that had not been sold prior to the divorce and there was an
ongoing lawsuit pertaining to several matters on the property.

COUNSEL: When you say that Mrs.
Argovitz participated in the larger tract of land, what do you mean by that?

STEWART: I=m talking about H in the B 13-H, in the decree itself.

COUNSEL: So, you=re saying that she had an interest in
that pursuant to the divorce decree?

STEWART: Yes, sir.

COUNSEL: Now, as to the smaller tract
of land, did Mrs. Argovitz have an interest in that pursuant to the divorce
decree?

STEWART: No, sir.

COUNSEL: And in the lawsuit, what was
that lawsuit about?

*                                  *                                  *








STEWART: It had to deal with the
title company, a few other things, making assertions on what they could do with
the land.  They were later found not to be able to do what they thought they
could do with the land.

COUNSEL: And does Mrs. Argovitz
participate in that aspect of the 2022?

STEWART: No.  No, sir, she didn=t.

COUNSEL: Did you get any accounting
from Mr. Argovitz at any time to see if that 675 related to only the large
tract of land or whether related to the large tract of land, the small tract of
land and the Chicago Title lawsuit that Mrs. Argovitz didn=t even have an interest in?

STEWART: No, sir.  That was a lump
sum.

*                                  *                                  *

COUNSEL: So, you have not [sic] see
any [sic] accountant to show whether Mr. Argovitz is being reimbursed for
expenditures on some interest that only he has ownership in pursuant to the
decree?

STEWART: That=s correct.

COUNSEL: That being, more
specifically, that smaller tract of  land and that lawsuit?

STEWART: Yes, sir.  That=s correct.

COUNSEL: Now, if some of that 675 was
to fund that lawsuit of which Mr. Argovitz is the only one that has an interest
in it amongst these two parties or to pay taxes or something of that nature on
the smaller tract of land, in your opinion, would it be appropriate for him to
be reimbursed and Mrs. Argovitz leaves the B

*                                  *                                  *

STEWART: Well, it would not be under
accounting principles applicable.  They don=t match.  The expenses don=t match the assets that went with it.








COUNSEL: And the proceeds from the
sum was from the sale of a larger tract of land?

STEWART: Only.  Yes, sir.

COUNSEL: Only.  And so, you=re saying it=s not appropriate to take the
proceeds from the larger tract of land which both of these parties shared an
interest and reimburse Mr. Argovitz from those proceeds that may belong to Mrs.
Argovitz for his expenditures of those other two assets of which he only had an
interest?

*                                  *                                  *

COUNSEL: What is your concern about
the B from an accounting standpoint of how
that was done?

*                                  *                                  *

STEWART:
Well, under a matching concept, it would seem that the expenses of the project
would go with the assets that were awarded to the various individuals.     

*                                  *                                  *

COUNSEL: Now, if hypothetically
someone is being reimbursed for expenses that were incurred in connection with
the other two parcels of that 2022 entity, that being the lawsuit and the
smaller tract of land.  That would not be B Paddy would not be receiving
one-half of the net proceeds, would she?

STEWART: Of this?  No.  Of this one
tract, no.

*                                  *                                  *

COUNSEL: And you heard that some of
that=s B well, some of the 675 was spent, and
I=m jumping around a little bit, was
spent regarding signing the lawsuit?

STEWART: Yes, sir.

*                                  *                                  *








COUNSEL: And, you also understood
that he said some of it was in reference to the smaller parcel of land?

STEWART: Yes, sir.

COUNSEL: He had not provided you any
accounting to segregate those out, has he?

STEWART: No, sir.

*                                  *                                  *

COUNSEL: And based upon Dr. Argovitz=s testimony this morning that some of
that 675 that he reimbursed were debts and liabilities associated with the
lawsuit and a smaller tract of land; does it appear that those debts are his
responsibility?

*                                  *                                  *

STEWART: Under B just strictly for financial
purposes, Judge, under the matching concept, if you=re going to match revenues you=re going to have to match the same
expenses with them.  The revenues go with expenses.  The liabilities go with
the assets, if you will.

Jerry relies on Stewart=s deposition testimony of May 11,
2005.  Paddy=s counsel was not present at Stewart=s deposition.  When questioned by
Jerry=s counsel, Stewart testified as
follows at his deposition:

COUNSEL: Since January 9th of 2004,
are there any lack of documents that you have any concern about?

STEWART: No.

COUNSEL: Okay.  And B >And Mr. Stewart may testify to
generally acceptable accounting procedures and the adherence or lack thereto in
this matter by Dr. Argovitz.=  Do you have any complaints about Dr. Argovitz failing to
adhere to general accounting procedures?

STEWART: No.








COUNSEL: . . .  >The general substance of Mr. Stewart=s opinions and mental impressions are
that Dr. Argovitz took reimbursements and/or offsets for which he has failed to
provide documentation to substantiate that such reimbursements/offsets were
according to the terms of the parties= Final Decree of Divorce.=  Is that your opinion or not?

*                                  *                                  *

STEWART: This is a compound question,
Mr. Conner.  The first part, has he failed to provide documents, no.

*                                  *                                  *

COUNSEL: So he has B so your opinion is that, in fact, he
has provided documents rather [sic] that he has failed to provide documents?

STEWART: That=s correct.

COUNSEL: Okay.

STEWART: As to whether what he did
within those documents that he=s reporting within those documents that were B or were according to the terms of
the parties final decree of divorce, I can=t opine to that.  That=s a legal opinion.

*                                  *                                  *

COUNSEL: . . .  >Respondent had failed to properly
receive and account for his management, disposition and distribution of the
property.=  From your accounting perspective as her representative, do you agree or
disagree with that statement?

STEWART: I disagree.

COUNSEL: Okay.  You believe he has
properly received and accounted for the B his management, disposition and
distribution of the property?

STEWART: That=s correct.

*                                  *                                  *








COUNSEL: But as far as his accounting
and documentation, did you find any evidence from either as an accountant or a
certified fraud examiner that he has falsified anything?

STEWART: I B I have not found any such
information.

COUNSEL: Okay.  And do you find that
he manipulated this in any way from an accounting standpoint?

STEWART: No.

COUNSEL: Okay.  And you are unable to
have an opinion because it=s a legal opinion as to whether or not it was in favor or for
his personal benefit to her detriment?

STEWART: That=s correct.

COUNSEL: . . .  >Respondent withheld funds to which Petitioner
is entitled and diverted them to his own personal benefit.=  From an accounting standpoint, have
you found that to be correct?

STEWART: Again, sir, that=s B that=s a legal conclusion.  I=m B I can=t opine to that.

COUNSEL: All right.  But from an
accounting procedure though, you don=t find where he=s done anything B for lack of a better term B funny or dishonest or falsification
or anything of that nature regarding these books and these B this accounting.

STEWART: That=s correct, Mr. Conner.

*                                  *                                  *

COUNSEL: All right.  Let=s go back and refresh our
recollection.  The $675,000 that was the cash call; correct? 

STEWART: Correct.

COUNSEL: Okay.  And he certainly has
accounted for that; has he not?

STEWART: That=s correct.








COUNSEL: And when she says she=s B he=s failed to account for that, that is
an incorrect statement?

STEWART: That=s correct.

COUNSEL: In your opinion as her
expert?

STEWART: That=s correct.

Finally, Paddy relies on her expert=s affidavit of January 26, 2006,
which she filed in opposition to Jerry=s motion for summary judgment
regarding her breach of fiduciary duty claim.  Stewart=s affidavit provides in pertinent
part:

Further, the accounting which I reviewed reveals that
the $675,000 was monies not advanced by Jerry Argovitz but advanced by a third
party, Lakes Entertainment, Inc. toward the parties= and Kevin Kean=s
capital account on the entire 2022 acre project.  Further, these funds were not
utilized for expenses only related to the asset which Ms. Argovitz was awarded
an interest in with Jerry Argovitz, but for expenses, (legal fees) related to a
separate asset comprising the 2022 acre project in which Ms. Argovitz received
no interest B specifically, the Chicago Title Lawsuit.  As I stated
in my deposition, such creative accounting would be inappropriate under
generally acceptable accounting principles, as reimbursement for expenses on
one investment ought to be reimbursed from the net sales proceeds of that
specific investment, and not from the net sales proceeds of a different investment. 
The result of Jerry Argovitz=s accounting is
that expenses incurred on an asset awarded solely to Dr. Argovitz were paid
from net proceeds of a different asset awarded fifty percent to Dr. Argovitz
and fifty percent Ms. Argovitz.

 








These excerpts reveal conflicts
arising from Stewart=s statements at the hearing, at his deposition, and in his
affidavit.  A[A] deposition does not have controlling effect over an affidavit in
determining whether a motion for summary judgement should be granted.@  Randall v. Dallas Power &
Light Co., 752 S.W.2d 4, 5 (Tex. 1988) (per curiam).  AThus, if conflicting inferences may
be drawn from a deposition and from an affidavit filed by the same party@ in opposition to a summary judgment
motion, a fact issue is presented that will preclude summary judgment.  Id. 
This evidence creates a conflict between Stewart=s hearing testimony and deposition
testimony, and between Stewart=s deposition testimony and his affidavit.  This conflict
precludes summary judgment with respect to Paddy=s claim that, with respect to the
$675,000 payment, Jerry breached his fiduciary duty by failing to allocate to
Jerry=s portion of the 1,978-acre sale
proceeds those expenses and debts associated with assets awarded to Jerry under
the Final Divorce Decree.  

Under the sham affidavit doctrine
recognized by several courts of appeals, a contradictory affidavit prepared by
the same witness after a deposition should be disregarded if (1) the
discrepancy is not explained, and (2) it appears the affidavit was drafted
solely as a sham to defeat summary judgment.  Pando v. Sw. Convenience
Stores, L.L.C., 242 S.W.3d 76, 79 (Tex. App.CEastland 2007, no pet.); Trostle
v. Trostle, 77 S.W.3d 908, 915 (Tex. App.CAmarillo 2002, no pet.); Eslon
Thermoplastics v. Dynamic Sys., Inc., 49 S.W.3d 891, 901 (Tex. App.CAustin 2001, no pet.); Burkett v.
Welborn, 42 S.W.3d 282, 286 (Tex. App.CTexarkana 2001, no pet.); Farroux
v. Denny=s Rests., Inc., 962 S.W.2d 108, 111 (Tex. App.CHouston [1st Dist.] 1997, no pet.). 
Other courts of appeals have rejected or limited this doctrine. Pierce v.
Wash. Mut. Bank, 226 S.W.3d 711, 717-18 (Tex. App.CTyler 2007, pet. denied); Del Mar
Coll. Dist. v. Vela, 218 S.W.3d 856, 862 (Tex. App.CCorpus Christi 2007, no pet.); Davis
v. City of Grapevine, 188 S.W.3d 748, 756 (Tex. App.CFort Worth 2006, pet. denied); Thompson
v. City of Corsicana Hous. Auth., 57 S.W.3d 547, 557 (Tex. App.CWaco 2001, no pet).

This Court has acknowledged the
recognition of a sham affidavit doctrine by other courts.  See Blan
v. Ali, 7 S.W.3d 741, 747 n.3 (Tex. App.CHouston [14th Dist.] 1999, no pet.) (AWhile we agree that [Farroux]
precludes the trial court from considering an affidavit that contradicts
deposition testimony without an explanation for the change in testimony, the
supplemental affidavit does not contradict Dr. Reisbord=s deposition testimony@) (emphasis in original).  However,
we need not decide the degree, if any, to which this doctrine is recognized by
the Fourteenth Court of Appeals or may be applicable to this case.  This is so
for two reasons.








First, Jerry did not object to
Stewart=s subsequent affidavit in the trial
court as being a sham; he has not argued the sham affidavit doctrine on appeal;
and he has not addressed on appeal the conflict between Stewart=s deposition testimony and his
subsequent affidavit.

Second, the sequence of events under
the sham affidavit doctrine contemplates deposition testimony followed by the
filing of a contradictory sham affidavit.  See Pando, 242 S.W.3d at 79; Trostle,
77 S.W.3d at 915; Eslon Thermoplastics, 49 S.W.3d at 901; Burkett,
42 S.W.3d at 286; Farroux, 962 S.W.2d at 111.  This case does not fit
the pattern because Stewart=s hearing testimony occurred first, and then was contradicted
by testimony at a deposition that Paddy=s attorney did not attend.  Then, a
subsequent affidavit created more contradiction as between the deposition and the
affidavit. Stewart=s affidavit contradicts his deposition testimony but is
consistent with his earlier hearing testimony.  Even if the contradiction
between the deposition and the affidavit is disregarded, a contradiction
sufficient to raise a fact issue still exists between the earlier hearing
testimony and the subsequent deposition.  

We therefore hold that a fact issue
exists regarding Paddy=s claim that, with respect to the $675,000 payment, Jerry
breached his fiduciary duty by failing to allocate to Jerry=s portion of the 1,978-acre sale
proceeds those expenses and debts associated with assets awarded to Jerry under
the Final Divorce Decree.[6] 








2.         Ambiguity
in Final Divorce Decree

In her fourth issue, Paddy asserts
that the summary judgment motion and evidence show there are Amaterial ambiguities and
inconsistencies in and between the Final Decree and the [mediated settlement
agreement] which can only be completely resolved by determination of the intent
of parties which inherently creates fact issues.@ 

As noted earlier, Paddy waived any
argument regarding asserted variances between the Final Divorce Decree and the
mediated settlement agreement, and ambiguities in the mediated settlement
agreement, because she failed to raise these grounds in the trial court in her
response to Jerry=s summary judgment motion on her breach of fiduciary duty
claim.  See Clear Creek Basin Auth., 589 S.W.2d at 678.  Because it was
raised in the trial court, we address on appeal Paddy=s argument relating to an asserted
ambiguity in the Final Divorce Decree=s language.

Paddy contends that an ambiguity
exists within the four corners of the Final Divorce Decree because the Final
Divorce Decree does not specify whether the Afunds advanced by him@ language refers to separate property
funds advanced by Jerry or community property funds advanced by him.  However,
at the May 19, 2006 hearing on the Motion for Reconsideration of Summary
Judgment, Paddy disclaimed any contention relating to an ambiguity in the language
of the Final Divorce Decree.  

In particular, the following exchange
occurred between the trial court and Paddy=s counsel: 

THE COURT: I mean, I think it=s clear the issue, whether the
language is ambiguous, has already gone to arbitration there=s an arbitration award.  I don=t think you=re even arguing with that, about the
ambiguity of the language.

COUNSEL: I am not. 

Therefore, Paddy now is foreclosed
from arguing ambiguity in the Final Divorce Decree=s language.  

We overrule Paddy=s fourth issue.                                                                           








3.         No-Evidence
Summary Judgment

In her fifth issue, Paddy argues that
Jerry was not entitled to a no-evidence summary judgment because she presented
more than a scintilla of evidence that Jerry failed to timely  give an
accounting and breached his fiduciary duty by failing to correctly allocate
expenses between the sales of the 1,978-acre and 44-acre parcels of 2022 Ranch
for which she sustained monetary damages.

Because Paddy was required to fairly
apprise the trial court of the issues that defeated Jerry=s no-evidence summary judgment
motion, and to identify evidence that raises a fact issue on the elements
challenged by Jerry=s motion, Paddy has waived any argument regarding Jerry=s failure to provide a timely
accounting by failing to expressly present this issue to the trial court and
failing to point to evidence that raises a fact issue.  See Tex. R. Civ. P. 166a(i) cmt. 
Therefore, we overrule Paddy=s issue with regard to this argument.

We already have held that a fact
issue exists regarding whether Jerry breached his fiduciary duty by failing to
properly allocate expenses and debts associated with assets awarded to Jerry
under the Final Divorce Decree to his portion of the proceeds of the 1,978-
acre sale.  In light of our disposition of Paddy=s first issue regarding Jerry=s allocation of expenses, and
considering that the same evidence supporting a fact issue in issue one also
supports Paddy=s argument here, we hold that Paddy produced enough evidence to raise a
fact issue regarding Paddy=s claim that, with respect to the $675,000 payment, Jerry
breached his fiduciary duty by failing to allocate to Jerry=s portion of the 1,978-acre sale
proceeds those expenses and debts associated with assets awarded to Jerry under
the Final Divorce Decree.

Accordingly, we sustain Paddy=s fifth issue with respect to her
claim for breach of fiduciary duty predicated on the lack of allocation of
expenses and debts associated with assets awarded to Jerry under the Final
Divorce Decree to his portion of the proceeds of the 1,978-acre sale.

 








Conclusion

The trial court=s judgment in Cause Number
14-07-00396-CV is affirmed.  The trial court=s judgment in Cause Number
14-07-00206-CV is affirmed in part and reversed and remanded in part.  A
material fact issue exists regarding Paddy=s claim that, with respect to the
$675,000 payment, Jerry breached his fiduciary duty by failing to allocate to
Jerry=s portion of the 1,978-acre sale
proceeds those expenses and debts associated with assets awarded to Jerry under
the Final Divorce Decree.  We reverse the trial court=s judgment in Cause Number
14-06-00206-CV solely with respect to that claim and remand for further
proceedings in accordance with this opinion; we affirm the remainder of the
trial court=s judgment.

 

 

/s/        William J. Boyce

Justice

 

 

Judgment rendered and Memorandum
Opinion filed December 9, 2008.

Panel consists of Chief Justices
Hedges, and Justices Anderson and Boyce.

 

 

 

 

 

 

 

 









[1]           Paddy supplemented her live petition with
this ambiguity contention as part of her breach of fiduciary duty claim.





[2]           After reviewing the briefs and records in
these two appeals, the court on its own motion orders these appeals
consolidated.





[3]           In light of our disposition of Paddy=s fourth and fifth issues, we deny Jerry=s Motion to Strike Portions of Appellant=s Brief and Appendix. 





[4]           AN.I.G.C.
License Fee@ stands for Nevada Indian Gaming Commission License
Fee.





[5]           The jointly owned assets include: American
Rural Homes; AOJ One, LLC; AOL Two, LLC; San Jacinto Plantation, Ltd.;
Tealbrook, Ltd.; Timberbrook, Ltd.; Winds West, Ltd.; The existing contract to
sell the 2,022 acres located at Honey Springs Ranch to Riverside Land
Conservancy; The sale of Mississippi property awarded herein jointly to the
parties; Kean Argovitz Resorts, Inc. - Michigan; Kean Argovitz Resorts -
Shingle Springs, LLC, including any lawsuits/claims related thereto; and Kean
Argovitz Resorts - Jamul LLC, including any lawsuits/claims related thereto.





[6]           In her second issue, Paddy asserts in
conclusory fashion that Jerry=s testimony was
full of contradictions and inconsistencies and that Jerry made numerous
conclusory statements that he provided a complete accounting.  However, Paddy
fails to identify which evidence in particular she claims is inadequate to
support Jerry=s summary judgment motion; she also fails to explain
how and why this evidence is contradictory, conclusory, and inconsistent.  She
fails to inform the court where this objectionable evidence can be found in the
appellate record by failing to provide any citations to the record to support
this issue.  Therefore, we do not consider her argument under her second issue
that Jerry=s testimony is contradictory, conclusory, and
inconsistent.  See Tex. R. App. P. 38.1(h), (i).  Paddy also attacks the
propriety of Jerry=s reliance on certain portions of Stewart=s testimony and asks us to reverse and remand. In
light of our disposition of Paddy=s
first issue, we need not address Paddy=s
subsidiary argument that Jerry improperly relied on Stewart=s testimony.